[No. 16931–9–I.   Division One.   June 22, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. NATHANIEL COOLEY, *Appellant.*

*John Christiansen* and *Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanne E. Tweten, Deputy,* for respondent.

PEKELIS, J.—Nathaniel Cooley, a juvenile, appeals his conviction for first degree statutory rape. He contends that the trial court erred in (1) finding the child victim competent to testify, and (2) admitting hearsay statements under RCW 9A.44.120, the child victim hearsay statute, made by the child victim to his mother, a social worker, and a detective. He asserts that suggestive interview techniques employed during pretrial interviews with the social worker improperly influenced the victim's memory, rendering him incompetent and his statements to her and others unreliable. We affirm.

Defendant Nathaniel Cooley (Nat) was charged with the statutory rape in the first degree of "K," a boy 5 years of age at the time of trial, and age 4 or 5 at the time of the incident. Nat, age 14 at the time of trial and 13 at the time

of the incident, allegedly engaged K in an act of oral–genital contact. Nat's younger brother, Matt, not a defendant in this case, is also alleged to have engaged K in similar contact. K attended day care in the home of Nat's and Matt's grandmother, where the incident is alleged to have taken place.

I

FACTS

The trial judge held a competency hearing to determine if K was competent to testify. K was able to name his school, his teachers, his friends at school, and described a visit to Chuck–E–Cheese on his last birthday. K said he knew what it meant to tell the truth and promised the judge that he would tell the truth. When asked if it were true that he was wearing a blue sweater, he replied "No," and said his sweater was blue and white. He knew he had been going to "grandma's" house for a long time and that he went there because she took care of him. He also indicated that he knew a boy named Nat.

The trial court found him competent, noting that "he has a tendency to be overly precise being truthful". Cooley made no objection to the court's ruling.

The court also heard testimony of K's mother, of Lucy Berliner, a social worker, and of Detective Lewis, each of whom testified to hearsay statements by K.

K's mother testified that on the morning of February 25, 1985, K told her that on the previous day Matt had made K engage in an oral–genital sexual act with him. K described Matt's genitalia as both his "pecker" and "dick." Based on that information, K's mother took him to the Sexual Assault Center at Harborview Medical Center. He was interviewed by a staff social worker, Lucy Berliner, on February 27. K's mother was present during the interview. K's mother testified that K first described sexual interactions involving Matt and another child, using anatomically correct dolls.

As he positioned the dolls, K volunteered, "And Nat was on the other side of the couch." Since neither K's mother

nor Berliner had known anything about Nat's involvement prior to that time, Berliner had asked no questions about Nat, but she then questioned K about both boys. K proceeded to describe a sexual contact with Nat in which K had been made to perform fellatio on Nat. After they left Berliner's officer, K's mother questioned K again about whether Nat made K "suck his [Nat's] dick." K answered, "Yes." Several times thereafter during formal interviews she heard K make the same statement when various persons were present, including Berliner, Detective Lewis, a prosecutor and defense counsel. She also overheard him spontaneously make the same remark to a stranger at a school auction.

Cooley objected to K's mother's testimony on the grounds that K's out–of–court declarations failed to meet the standards for reliability necessary for admission under the child abuse hearsay exception statute, RCW 9A.44.120. The trial court determined that K's mother's testimony was reliable and was therefore admissible.

Berliner testified that K first described his own sexual acts with Matt and also acts he had observed between Matt and another child. Then she asked K whether anyone else had ever done anything like that to him. K went on to describe oral sex which he had been made to perform on Nat, although Berliner could not recall the exact words K used to describe that act. Berliner's testimony was that K clearly discriminated between Nat and Matt by using two dolls of different sizes to demonstrate the difference in size between the boys' genitalia.

Berliner also testified that she saw K a second time a couple of weeks later. At that time, Berliner prepared K for a "joint interview" which took place a few days later in the juvenile prosecutor's office with Berliner, K's mother, a prosecutor and Detective Lewis. Her preparation consisted solely of explaining to K the importance of telling the truth to the police. Berliner testified that at the joint interview, K stated again that "Nat had made him suck his dick," that he "had to do it once," and "that Nat told him not to

tell anyone."

There was no objection to Berliner's testimony on the grounds of hearsay, and the court overruled Cooley's objection based on the State's alleged failure to properly notify him before trial of the content of Berliner's testimony, pursuant to the notice requirement of RCW 9A.44.120.

Detective Lewis testified to the same hearsay statements made by K at the juvenile prosecutor's office. He wrote down K's words, "He made me suck his dick," verbatim at the time of the interview. Lewis confirmed that K was not confused as to who had done what to him. There was no objection to Lewis' testimony that related to the child hearsay issue.

## II
### COMPETENCY OF CHILD WITNESS

We turn first to the question of K's competency to testify. Cooley contends for the first time on appeal that Berliner's pretrial interview procedures were so suggestive as to both content and language that K was rendered incompetent. Cooley acknowledges that counsel failed to object to the admission of K's testimony on that or any other grounds. He argues, however, that because K's memory was falsified by Berliner's procedures, cross examination of K was ineffective, and therefore his right of confrontation under the sixth amendment to the United States Constitution was denied.

Except as to issues of manifest error affecting a constitutional right, we will not consider an issue or theory that was not raised in the trial court. RAP 2.5(a)(3); *Buchseib/Danard, Inc. v. Skagit Cy.*, 99 Wn.2d 577, 581, 663 P.2d 487 (1983); *Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982). The purpose of this rule is to allow the trial court the opportunity to consider all issues and arguments and correct any errors, in order that unnecessary appeals will be avoided. *Smith v. Shannon,* 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

Cooley does not persuade us that the facts presented

here create even the possibility that improper interference with the witness took place; much less that it rose to constitutional proportion. Our review of the record does not support Cooley's generalized allegations that Berliner's interviews influenced K's memory or perceptions.[1] Moreover, the record demonstrates that Cooley was able to vigorously cross-examine both Berliner and K on matters relating to this issue, and thus exercised his constitutional right to confront witnesses. Under the facts presented here, we do not believe that by allowing K to testify, a manifest error occurred. Thus, we decline to review the determination of the trial court that K was competent to testify.

## III
### ADMISSION OF HEARSAY STATEMENTS

Next, we turn to the admission of K's hearsay statements admitted through the testimony of Berliner and Detective Lewis. While objections were raised to their testimony, these were not on the grounds of hearsay. A party may only assign error on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). Our close review of the colloquies with the court demonstrates that the hearsay issue that Cooley argues on appeal was not preserved with regard to Berliner's or Lewis' testimony.

Cooley contends that the error is nonetheless reviewable because admission of the hearsay statements violated his right of confrontation under the Sixth Amendment. A party may raise for the first time in the appellate court a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179 (1985); *State v. Dictado*, 102 Wn.2d 277, 286, 687 P.2d 172 (1984). Thus, we must determine whether the admission of the

---

[1]Cooley suggests that we remand for a hearing on the suggestibility issue. If this court were to remand on the record before us, we would be stating, in effect, a rule that in every child abuse case where a pretrial interview has occurred, a "suggestibility hearing" would have to be held. We decline to adopt such a rule.

hearsay statements here can be characterized as manifest error affecting a constitutional right.

The confrontation clause of the Sixth Amendment operates in two ways to restrict the admission of hearsay. First, the declarant of the out–of–court statement must either be produced and available for cross examination or be shown to be unavailable. Second, in the latter situation, where the declarant is shown to be unavailable, the statement must bear adequate "indicia of reliability" in order to be admissible. *Ohio v. Roberts,* 448 U.S. 56, 65–66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

█ Cooley appears to believe that these indicia of reliability must be demonstrated even when the declarant *is* available for cross examination. He apparently bases his assumption on the rephrasing of the *Ohio v. Roberts* rule in *State v. Ryan,* 103 Wn.2d 165, 170, 691 P.2d 197 (1984),[2] which could be read to support his contention that reliability must be shown even when the declarant testifies. However, since such a reading would be in direct conflict with the line of United States Supreme Court cases expressly relied on by the court in *Ryan,* we believe it is appropriate to follow the analysis of those cases. For example, in *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), the Supreme Court stated:

> [T]here is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out–of–court statements, as long as the declarant is testifying as a witness and subject to full and effective cross–examination.
>
> . . .
> . . . For where the declarant is not absent, but is present to testify and to submit to cross–examination, our cases, if anything, support the conclusion that the admission of his out–of–court statements does not create a confrontation problem.

*Green,* 399 U.S. at 158, 162. Moreover, our own State

---

[2]The *Ryan* court stated that the *Roberts* test required "(1) Either the production of the out–of–court declarant or a demonstration of unavailability, *and* (2) assurances of reliability of the statement." (Italics ours.) *Ryan,* 103 Wn.2d at 170.

Supreme Court has quoted or rephrased the *Roberts* rule numerous times and has never before or since implied the interpretation Cooley urges. *See State v. Hieb,* 107 Wn.2d 97, 106–07, 727 P.2d 239 (1986); *State v. Terrovona,* 105 Wn.2d 632, 642, 716 P.2d 295 (1986); *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986); *State v. Dictado,* 102 Wn.2d 277, 287–88, 687 P.2d 172 (1984); *State v. Valladares,* 99 Wn.2d 663, 670, 664 P.2d 508 (1983); *State v. Parris,* 98 Wn.2d 140, 144–45, 654 P.2d 77 (1982).

Here, the declarant, K, was found competent and testified. A review of the record reveals that K repeated the statements implicating Cooley on direct examination and was thoroughly cross–examined. We hold, therefore, that Cooley's right to confrontation was not denied by the admission of K's hearsay statements to Lucy Berliner and Detective Lewis.

We turn next to the admission of K's hearsay statements to his mother. Counsel did object to the testimony of K's mother as not meeting the test of reliability required under RCW 9A.44.120, and thus did preserve this issue on appeal. On appeal, Cooley also asserts that his confrontation rights were denied.

■ We begin with the statutory question. The determination of admissibility under the child abuse hearsay exception statute, RCW 9A.44.120, is within the sound discretion of the trial court and will not be reversed absent a showing of manifest abuse of that discretion. *State v. Slider,* 38 Wn. App. 689, 698, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985). Protections for the defendant under the statute exceed the protections of the confrontation clause, in that assurances of reliability are required as a threshold to the admission of hearsay, whether or not the victim testifies. *See State v. Gitchel,* 41 Wn. App. 820, 825, 706 P.2d 1091 (1985). If the statements are shown to be reliable and the child testifies, the statutory requisites are met. RCW 9A.44.120; *Ryan,* 103 Wn.2d

at 170.[3]

In *Ryan,* the court listed nine factors that must be applied when determining whether the time, content, and circumstances surrounding a child's out–of–court declarations provide sufficient indicia of reliability to allow them to be admitted under the statute. These factors are (1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declaration and the relationship between the declarant and the witness; (6) the statement contains no express assertion about past fact; (7) cross examination could not show the declarant's lack of knowledge; (8) the possibility of the declarant's faulty recollection is remote; and (9) the circumstances surrounding the statement are such that there is no reason to suppose the declarant misrepresented defendant's involvement. *Ryan,* 103 Wn.2d at 175–76. These factors must be substantially met before a statement is demonstrated to be reliable. *State v. Griffith,* 45 Wn. App. 728, 738–39, 727 P.2d 247 (1986).

Here, the trial court did not abuse its discretion in applying the factors. There is nothing in the record indicating a motive to lie, or that K's character is questionable. K's statement regarding Nat's sexual abuse was heard initially by both K's mother and Berliner, and was later repeated in interviews with Detective Lewis, Berliner, defense counsel, and a deputy prosecutor. K's mother also overheard K make the same statement spontaneously to a stranger in public. Most importantly, the initial statement regarding Nat's involvement was made spontaneously, with no solicitation or prompting by K's mother or Berliner, neither of whom suspected Nat's involvement at that time.

---

[3]Cooley also argues that K had been rendered incompetent by "pretrial interview procedures" and thus K was "unavailable" at trial and K's out–of–court statements are necessarily unreliable. Since we have held that the trial court did not err in finding K competent, this argument warrants no further discussion.

Thus, as to timing, no predisposition to confirm any abuse by Nat existed. As the trial court put it, K "simply came forward with that when [Nat] wasn't even a suspect in the eyes of other people."

Although K's statements do contain assertions about past facts, K's knowledge was subject to cross examination. The content of K's statements indicate that he clearly discriminated between Nat and Matt, making the possibility of his faulty recollection remote, and there is no evidence in the record indicating that the circumstances surrounding K's initial statement were such that he would have misrepresented Nat's involvement. On the contrary, the testimony was that Berliner, who conducted the interview, approaches child interviews in "as nondirective and nonleading way as possible."

Thus, at least eight of the nine *Ryan* factors were met in this case. Since the factors overwhelmingly favor the admission of hearsay, the trial court did not abuse its discretion in admitting the hearsay statements of K to his mother.

■ Our Supreme Court has held that where the statutory requirements for admissibility under RCW 9A.44.120 are met, constitutional confrontation requirements will also be satisfied. *Ryan,* 103 Wn.2d at 170; *see also State v. Hancock,* 46 Wn. App. 672, 678, 731 P.2d 1133 (1987); *State v. Frey,* 43 Wn. App. 605, 608–10, 718 P.2d 846 (1986). Thus, by holding that the statement was admissible under the statute, we necessarily conclude that Cooley's confrontation rights were not violated.

We affirm.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Review denied by Supreme Court October 6, 1987.