2014 NOV 17 AM 10: 55

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 70561-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| T.Y. (D.O.B. 4/29/1997), | UNPUBLISHED OPINION |
| Appellant. | FILED: November 17, 2014 |

LEACH, J. — T.Y. appeals his juvenile court adjudication and disposition for child molestation in the first degree. He challenges the trial court's finding that complaining witness D.B., who was five years old at the time of trial, was competent to testify. He also contends that prosecutorial misconduct deprived him of a fair trial. Because T.Y. did not object at trial to the court's competency ruling and he does not show manifest error affecting a constitutional right, he may not raise this issue for the first time on appeal. Because he has also failed to establish prosecutorial misconduct, we affirm.

Background

In the summer of 2012, 15-year-old T.Y. lived in Bothell with his mother, Chrissy Mannhalter, his stepfather, and two younger siblings. Mannhalter ran a licensed day care on the main floor of the family home, usually caring for about

eight children. She employed her husband, mother-in-law, and a friend as her assistants, and T.Y. also helped.

D.B. was four years old that summer. She had attended Mannhalter's day care since 2009. One day in July, while in the bathroom with her mother, D.B. pointed to her "private area" and told her mother that she "hurt down here." Her mother noticed her vaginal area was red and applied rash ointment. D.B. then told her mother that she was red because "[T.Y.] keeps touching me down there."

D.B.'s mother called Mannhalter and told her what D.B. said. Mannhalter reported the incident to her licensor. On July 24, Child Protective Services (CPS) investigator Corrie Hayes interviewed D.B. at home. While they played with stuffed animals, Hayes asked D.B. about day care. D.B. asked Hayes if she knew who T.Y. was. When Hayes said she didn't and asked D.B. to tell her more, D.B. said T.Y. was a "big kid," that they liked to play together, and that she really liked him. When Hayes asked what they did, D.B. "picked up her dress, patted the front of her panties in her vaginal area and said he touches me here." She told Hayes that T.Y. would tickle her, and they would sit on the couch together, and he would kiss her on the cheek "when it was over" and hug her. The next day, Hayes interviewed T.Y., who denied inappropriately touching D.B.

D.B.'s mother was reluctant to pursue the investigation. But after CPS initiated an investigation into her fitness as a parent, she agreed to cooperate and seek further professional help for D.B.

On December 5, forensic nurse examiner Paula Newman-Skomski examined D.B. Newman-Skomski talked to D.B. about personal safety and eventually asked her if anybody had touched her private areas. D.B. initially said no but then said that "[T.Y.] did at Chrissy's." D.B. said it happened more than once, in the living room.

On December 11, child interview specialist Gina Coslett conducted a videotaped interview of D.B. at Dawson's Place Child Advocacy Center. When Coslett began to explain the guidelines for the interview, D.B. interrupted, saying, "[T.Y.] touched my pee-pee down here and I can't go to Chrissy's anymore." When Coslett asked her to explain, D.B. said, "I don't remember. Can you tell me?" D.B. then told Coslett that this happened one time in the living room when others were present. She showed Coslett what happened by pulling up her dress and pointing toward her abdominal or pelvic area.

The State charged T.Y. in juvenile court with child molestation in the first degree. The trial court held a hearing at the start of trial to determine D.B.'s competency to testify. D.B. answered the prosecutor's questions about her birthday, Christmas, Halloween, her former day care, and the difference between the truth and a lie. The prosecutor then asked the court to find D.B. competent to testify. When the court asked for the defense's position, counsel replied, "I will defer to the Court." The trial court found D.B. competent to testify.

D.B. then testified that T.Y. tickled her under her clothes, pointing to her vaginal area. She said T.Y. did this "two times, every time," and answered

affirmatively when the prosecutor asked if she meant more than twice. When asked whether it happened in the "living room part or the bedroom part or the kitchen," she answered, "Bedroom part." When asked where she was sitting, she said, "On the floor, and on the couch, in the living room." D.B. appeared restless and reluctant during her testimony but answered all questions on direct and cross-examination.

T.Y. testified that he never touched D.B. inappropriately but played "tag, wrestl[ed] around, play[ed] with the little stuffed animals" with D.B. and all the other children at the day care. He said that he tickled her and the other children on the stomach. Both he and his mother testified that he was never alone with any of the children.

The trial court adjudicated T.Y. guilty of child molestation in the first degree.

T.Y. appeals.[1]

## Analysis

<u>Child Witness Competency</u>

First, T.Y. contends that the trial court abused its discretion in finding D.B. competent to testify. He argues that D.B.'s testimony shows she didn't understand her obligation to speak the truth on the witness stand, that she had limited memory of past events, and that her accounts were inconsistent and contradictory. The State responds that the trial court properly admitted D.B.'s

---

[1] The State initially filed a cross appeal but withdrew it on June 27, 2014.

testimony but argues as a threshold matter that because T.Y. didn't object to this issue at trial and does not demonstrate manifest error, he cannot raise it on appeal.

We agree with the State. Generally, a party who fails to raise an issue at trial waives the right to appeal that issue.[2] RAP 2.5(a)(3), however, allows a party to raise for the first time on appeal a "manifest error affecting a constitutional right." If the reviewing court determines that an alleged error affects a constitutional right, it then decides if the alleged error is manifest, meaning the error actually prejudiced the defendant at trial.[3] Here, because T.Y. was able to cross-examine D.B. and other witnesses who testified about D.B.'s accounts of the abuse, he was able to exercise his constitutional right to confront witnesses. Because T.Y. does not show a manifest error affecting a constitutional right, we decline to review the trial court's competency determination.[4]

---

[2] RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

[3] McFarland, 127 Wn.2d at 333.

[4] See State v. Cooley, 48 Wn. App. 286, 290-91, 738 P.2d 705 (1987) (finding that because defendant was able to "vigorously cross-examine" interviewer and child witness, no manifest error occurred); see also State v. Brousseau, 172 Wn.2d 331, 335, 347, 259 P.3d 209 (2011) (defendants have a due process right to competent evidence, but because the consequence of even an erroneous pretrial finding of witness competency is that the witness will testify at trial and be subject to cross-examination, risk of due process violation is minimal).

Prosecutorial Misconduct

Next, T.Y. argues that the prosecutor violated T.Y.'s right to a fair trial. In closing argument, the prosecutor told the court, "The only reasonable explanation for [D.B.]'s repeated disclosures of what happened is that what she said is what happened, and that [T.Y.] molested her. . . . What doesn't make sense is the implication that either she made it up or that somehow she was coached." Defense counsel did not object to the prosecutor's comments.

When a defendant did not object to the alleged prosecutorial misconduct at trial, this court does not review the alleged error unless the misconduct was so flagrant and ill intentioned that it caused prejudice incurable by a proper jury instruction.[5] Prejudice occurs only if "'there is a substantial likelihood the misconduct affected the jury's verdict.'"[6] In a bench trial, it creates a heavy burden for the defendant because we presume that a trial judge will disregard inadmissible matters when making findings.[7]

T.Y. argues that the prosecutor's statements "placed the burden on the defense to prove that D.B. made up a story or that she was coached" and misstated the burden of proof by implying that the court should convict T.Y. if it couldn't find a reason to disprove D.B. He contends that the prosecutor's

---

[5] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

[6] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)).

[7] State v. Read, 147 Wn.2d 238, 245-46, 53 P.3d 26 (2002); State v. Miles, 77 Wn.2d 593, 601, 464 P.2d 723 (1970).

conduct here was like that in cases such as State v. Fleming,[8] where the prosecutor told the jury it could only acquit the defendant if it found that the rape victim was lying, confused, or fantasizing.

We disagree. Unlike the prosecutor in Fleming, the prosecutor here did not tell the court that it could only acquit T.Y. if it found that D.B. was lying. And unlike other cases T.Y. cites,[9] the prosecutor did not say or imply that the court needed to believe the defendant or "fill in the blank" with a reason in order to acquit. Rather, the prosecutor's argument here was similar to that in State v. Killingsworth,[10] where the prosecutor argued that the only "reasonable explanation" for the evidence was the defendant's guilt. We affirmed Killingsworth's conviction, noting that the prosecutor "did not argue or imply that the defense had failed to offer other reasonable explanations or comment on Killingsworth's failure to testify. Rather, he simply argued that the evidence did not support any other reasonable explanation."[11] Here, as in Killingsworth, the prosecutor highlighted evidence that did not support a "reasonable explanation"

---

[8] 83 Wn. App. 209, 213, 921 P.2d 1076 (1996).

[9] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 713, 286 P.3d 673 (2012) (misconduct for prosecutor to imply that jury could not acquit unless it believed defendant's testimony); Emery, 174 Wn.2d at 759-60 (improper for prosecutor to argue that in order to acquit, jury must "fill in the blank" with reason); State v. Miles, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007) (misconduct for prosecutor to argue that jury could only acquit if it believed defendant); State v. Barrow, 60 Wn. App. 869, 874-76, 809 P.2d 209 (1991) (misconduct for prosecutor to argue that in order to acquit, jury had to believe the defendant and "completely disbelieve" the police officers State called as witnesses).

[10] 166 Wn. App. 283, 290 n.5, 269 P.3d 1064, review denied, 174 Wn.2d 1007 (2012).

[11] Killingsworth, 166 Wn. App. at 291.

other than T.Y.'s guilt: D.B.'s young age and lack of the sophistication that would be necessary to maintain a false account over a period of months, the fact that she liked T.Y. and considered him her friend, her consistent statements to her mother and three professionals, and the likelihood that T.Y. was sometimes alone with D.B. The prosecutor did not shift the burden of proof by asserting that the judge needed to find a reason to acquit T.Y. Rather, the prosecutor properly argued inferences from the evidence that weighed against a finding of reasonable doubt. No misconduct occurred. Moreover, we presume that the trial court disregarded inadmissible matters and followed the law. T.Y. does not overcome this presumption and therefore does not show prejudice.

## Conclusion

Because T.Y. fails to show manifest error affecting a constitutional right, we do not review T.Y.'s challenge to the trial court's finding that D.B. was competent to testify. Because T.Y. does not establish prosecutorial misconduct, we affirm.

_Leach, J._

WE CONCUR:

_Schindler, J._ _Appelwick, J._