[No. 36555.    Department One.    October 3, 1963.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES SIMMONS, *Appellant.**

*Robert S. Egger,* for appellant.

*Charles O. Carroll* and *Richard M. Ishikawa,* for respondent.

HILL, J.—The defendant, James Simmons, appeals from a conviction of the crime of robbery.

A service station was held up at about 8:00 p. m. December 8, 1961, by three men, one of whom had a revolver. The three men were seen by the service station attendant and by two women in an adjacent house. None of these witnesses could identify Simmons at the trial, but the

*Reported in 385 P. (2d) 389.

service station attendant and one of the women had identified him in a police line-up, about an hour and a half after the robbery, as one of the three men who had been at the service station.

The issue of major importance, on this appeal, is whether evidence of extrajudicial or pretrial identification of Simmons by two of the witnesses was admissible as original, independent, and substantive proof of an accused as the guilty party.

This issue is raised by the trial court's admission into evidence of three photographs (exhibits numbered 1, 2 and 3) over the objection of counsel for Simmons that they were secondary evidence in that they were not the best evidence of identity, as the defendant was seated in the courtroom and the eyewitnesses could not identify him.

The photographs were of a six-man police line-up; in exhibit No. 1, all of the men were looking toward the camera; exhibit No. 2 was a right profile view of the same six men; and exhibit No. 3, a left profile view.

The evidence bearing on the prior out-of-court identification was that, at about 9:30 p. m. on the night of the robbery, the service station attendant and the two women, who had seen the three men at the service station, were shown a six-man line-up at the police station in which the police had placed three men who were suspected of having participated in the holdup, together with three other men from the city jail of similar general description. The photographs were identified by half a dozen witnesses (including the service station attendant and the two women) as accurately portraying the line-up.

The service station attendant identified the man in the number one position in the line-up as one of the men who had robbed him; and, at the trial, he identified the number one man, as shown in the photographs, as one of the robbers; but he could not identify Simmons, in the courtroom, as one of the participants in the robbery or as one of the men in the line-up.

Mrs. Helen M. Horner, one of the women who had seen the three men at the service station, when shown the six-man line-up at 9:30 p. m. on the night of the robbery had picked the number one man in the line-up as one of the men she had seen. At the trial, she—like the service station attendant—designated the number one man in the photographs as one of the men she had seen; but she could neither identify Simmons (then in the courtroom) as one of the men she had seen nor as one of the men in the line-up.

The two officers, who had arrested Simmons and had seen the police line-up, identified the man in the number one position as Simmons, as did the officer who had formed the line-up—all of whom also identified Simmons in the courtroom.

When the state's case was completed, two eyewitnesses, who had seen the robbers at the service station, had identified the number one man shown in the photographs of the line-up as one of the three men who had committed the robbery; three witnesses present at the line-up had testified that the number one man shown in the photographs was Simmons.[1] Note that the witnesses who testified that Simmons was the number one man in the line-up were not testifying that an identification was made at that time.[2]

█ The photographs were admissible as part of the evidence concerning the extrajudicial identification, all of which evidence we hold to be admissible as substantive proof that Simmons was one of the participants in the robbery.

The California Supreme Court takes the position that evidence of an extrajudicial identification is admitted because an

---

[1] This fact was not in dispute, as Simmons, in his own testimony, states that he was the number one man in the line-up.

[2] This fact distinguished a case relied on by appellant (*People v. Trowbridge* (1953), 305 N. Y. 471, 113 N. E. (2d) 841), where there was no objection to the testimony by Margolius, the robbery victim, of his identification of the defendant at a police station; but the conviction was reversed because Conley, a detective, was permitted to testify to the police-station identification by Margolius.

". . . earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. (*People v. Slobodion*, 31 Cal. 2d 555, 559-560 [191 P. 2d 1]; *United States v. Forzano*, 190 F. 2d 687, 689; see *People v. Hood*, 140 Cal. App. 2d 585, 588 [295 P. 2d 525]; *People v. Bennett*, 119 Cal. App. 2d 224, 226 [259 P. 2d 476]; 4 Wigmore, Evidence (3d ed. 1940), § 1130, p. 208.)" *People v. Gould* (1960), 54 Cal. (2d) 621, 626, 354 P. (2d) 865.

The California court also points out that in a situation, like the one in the present case, where a witness fails to repeat the extrajudicial identification in court the probative value of the extrajudicial identification is not destroyed.

". . . for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. . . ." *People v. Gould, supra,* p. 626.

"Other circumstances" frequently encountered are changes in appearance by the defendant, often deliberately made for the purpose of preventing identification at the trial.

The Court of Appeals of Maryland, in *Judy v. State* (1958), 218 Md. 168, 174-175, 146 A. (2d) 29, 32-33, described the transition from the older strict holding—that evidence of an extrajudicial identification was hearsay—to the present holdings which made it possible to say:

". . . Now testimony as to extrajudicial identification is admissible in many jurisdictions both as substantive and corroborative evidence. . . ." (p. 172)

We concede that this may not yet be the majority rule, but we find it impossible to resist the logic of Professor Morgan in his article on "Hearsay Dangers" (62 Harv. L. Rev. 177, 192), quoted in the *Judy* case, *supra,* where he says:

" 'When the Declarant is also a witness, it is difficult to justify classifying as hearsay evidence of his own prior statements. * * * The courts declare the prior state-

ment to be hearsay because it was not made under oath, subject to the penalty for perjury or to the test of cross-examination. To which the answer might well be: "The declarant as a witness is now under oath and now purports to remember and narrate accurately. The adversary can now expose every element that may carry a danger of misleading the trier of fact both in the previous statement and in the present testimony, and the trier can judge whether both the previous declaration and the present testimony are reliable in whole or in part." ' " (p. 175)

Our own cases of *State v. Carlson* (1957), 50 Wn. (2d) 220, 223, 310 P. (2d) 867, and *State v. Wilson* (1951), 38 Wn. (2d) 593, 617-618, 231 P. (2d) 288, demonstrate our alignment with the authorities holding that evidence of extrajudicial identification of an accused is admissible as substantive evidence.[3]

We see no merit to the contention that it is not the best evidence; some courts consider it better than a court-room identification, for reasons indicated herein. In *Judy v. State, supra* (p. 173), the Court of Appeals of Maryland quotes approvingly the statement of one of its judges in an

---

[3]The appellant's brief cites only New York cases to the contrary, and we have not discussed the New York cases as we have recognized the existence of a split in the authorities. However, we do not regard the New York cases, taken as a whole, as being contrary to our holding in this case. They have arrived at the same rule by statute that we have reached by judicial decision.

*People v. Jung Hing* (1914), 212 N. Y. 393, 403, 106 N. E. 105, held flatly that evidence of a prior extrajudicial identification by a witness was hearsay.

*People v. Spinello* (1951), 303 N. Y. 193, 195, 202, 101 N. E. (2d) 457, points out that the New York legislature "to remove the brand of hearsay applied to such testimony," enacted § 393(b) of the New York Code of Criminal Procedure which reads:

" '. . . When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification.' "

The court there held that the statute made the testimony as to a prior identification substantive proof of identification.

*People v. Trowbridge* (1953), 305 N. Y. 471, 113 N. E. (2d) 841, as we have pointed out in Note 2, is not in point; the hearsay in that case came as a result of a detective testifying to a prior identification by a witness. Testimony by the witness of his own prior identification was not questioned.

earlier dissent, that " 'the best evidence of identification is usually the first identification.' "[4]

Neither do we see any hearsay here. Each witness testified to only that of which he or she had personal knowledge. Two witnesses testified that the number one man in the police line-up was one of the robbers; three other witnesses testified that Simmons was the number one man in the police line-up; all witnesses agreed that the photographs were an accurate representation of the police line-up.

Nor do we see any basis to contend that Simmons was denied his constitutional right to meet, face to face, the witnesses against him (Washington State Constitution, Art. 1, § 22). All witnesses were present in court and subject to as extensive a cross-examination as the appellant, Simmons, desired. His further contention that he had a right to cross-examine the witnesses at the time they made the identification at the police line-up is not supported by any authority that we have found.

It is urged that the evidence is insufficient to justify the verdict. In addition to the extrajudicial identification, there was evidence that Simmons, when arrested, was on the rear seat of a transit bus. After his arrest and removal from the bus, there was found, on or under the rear seat, 30 one-dollar bills and a five-dollar bill. The narrative record of his testimony offers no explanation of this circumstance.

We are satisfied that the evidence was sufficient to justify the verdict.

The judgment appealed from is affirmed.

OTT, C. J., HUNTER, and HALE, JJ., and MURRAY, J. Pro Tem., concur.

---

[4] Judge F. Neal Parke in dissent in *Blake v. State* (1929), 157 Md. 75, 85-86, 145 Atl. 185.