[No. 15780–9–I.  Division One.  March 2, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL O. HAMILTON, *Appellant.*

*Michael O. Hamilton,* pro se, and *Mark W. Muenster* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey Baird, Deputy,* for respondent.

SCHOLFIELD, C.J.—Michael Owen Hamilton appeals his convictions for assault in the second degree and burglary in the first degree, both while armed with a deadly weapon. We affirm.

### FACTS

C. M., Hamilton's former girl friend, had a date on July 13, 1984, with Allen Boulton, her new boyfriend. They spent the night at C. M.'s home. At 3 a.m. on July 14, 1984, Boulton and C. M. were awakened by the sound of a door-knob rattling and then breaking glass in the kitchen. Boulton left the bedroom to see what was happening, and was confronted in the hallway by Hamilton, carrying a gun. Boulton ran into the bathroom, slamming the door behind him. C. M. testified she saw Hamilton standing with his legs apart, both arms extended with a gun in his hand, pointed toward the bathroom door. Hamilton fired the gun through the bathroom door, and the bullet struck Boulton in the thigh.

C. M. ran to the telephone to call the police. Boulton, though injured by the gunshot, emerged from the bathroom and began wrestling with Hamilton in the hallway. Both Boulton and Hamilton eventually calmed down, and both went to C. M.'s bedroom to tell her to hang up the phone. C. M. then ordered Hamilton to leave, which he did.

Police officers arrived and began tending to Boulton's left thigh wound. While the officers were completing their investigation, Hamilton telephoned C. M.'s residence three separate times and spoke with Officer Webb. Hamilton asked about Boulton's condition, said he wished to speak to Boulton, and told Officer Webb that he could not meet with Webb to discuss the incident because he was washing his pants. Webb testified he talked to Hamilton for approximately 15 minutes total.

Hamilton testified he did not feel that his relationship with C. M. had been terminated. He testified that he tried to reach C. M. on the evening of July 13. His last attempt was in the early morning hours of July 14, at which time an unknown man answered the phone. Hamilton testified that he was surprised because C. M. had never given him any reason to doubt her fidelity to him.

Hamilton testified that he was fearful for C. M.'s safety and that "there was something very wrong going on", so he

decided to drive to C. M.'s residence. Hamilton testified he had a handgun with him because it had been in his jacket all evening. Upon arriving at C. M.'s home and seeing a strange car in the driveway, Hamilton testified that he tried unsuccessfully to arouse the occupants. Because Hamilton was concerned that C. M. was in danger, he broke into the house. Hamilton testified that he observed a naked man run from the bedroom to the bathroom. He said he was concerned that the unknown man had raped C. M., so he went toward the bathroom door, grabbed the doorknob, and the gun discharged accidentally. Hamilton testified that after the subsequent scuffle between the two men, he told Boulton that he was sorry and that the gunshot was an accident.

At the time of the trial, Allen Boulton was deceased from circumstances unrelated to this case. Therefore, the State presented, through the testimony of a police officer, Boulton's statements on the night of the shooting. This evidence was ruled admissible under the res gestae exception to the hearsay rule. According to Officer Krzyminski, Boulton mentioned that he and Hamilton talked after the scuffle, but Boulton "didn't elaborate as to what was said."

During the cross examination of Hamilton, the deputy prosecutor prefaced a question concerning the claimed accidental nature of the shooting with the statement, "Well, [Boulton] must have lied to the police later, then. He never said anything about an accident, never said that you'd apologized."

The prosecutor also cross–examined Hamilton concerning his telephone conversations with Officer Webb after the shooting, asking Hamilton why he had not made any exculpatory statements to Webb regarding the claimed accidental nature of the shooting.

No objection was made by defense counsel to either the prefatory statement or the cross examination. However, the jury was instructed that counsel's remarks, statements and arguments were not evidence and should be disregarded if they were not supported by the evidence. The jury found

Hamilton guilty of assault in the second degree and burglary in the first degree, both while armed with a deadly weapon.

Hamilton assigns error to the prosecutor's referral to the alleged absence of any statement by Boulton relative to the apology and accidental nature of the shooting. A second assignment of error relates to the prosecutor's questions to Hamilton about his failure to make exculpatory statements in his telephone conversations with Officer Webb.

### REFERENCE TO STATEMENT NOT IN EVIDENCE

Hamilton contends it was improper for the prosecutor to make the prefatory statement, "Well, [Boulton] must have lied to the police later, then. He never said anything about an accident, never said that you'd apologized." Hamilton argues this was improper because there was no evidence to support the statement. Officer Krzyminski testified only that Boulton said he talked to Hamilton, but that Boulton "didn't elaborate as to what was said." Since Boulton did not go into any detail about his conversation with Hamilton, there was no basis for an assertion about what was or was not said between the two men. It follows that there was no evidentiary basis for the prosecutor's claim that Hamilton had not apologized to Boulton for claimed the shooting was accidental.

A prosecutor has a duty to refrain from use of statements which are not supported by the evidence and which tend to prejudice the defendant. *State v. Gibson,* 75 Wn.2d 174, 176, 449 P.2d 692 (1969), *cert. denied,* 396 U.S. 1019 (1970). This duty is consistent with the duty of prosecuting attorneys to help assure that an accused receives a fair trial. *State v. Haga,* 8 Wn. App. 481, 493, 507 P.2d 159, *review denied,* 82 Wn.2d 1006 (1973).

█ The question was improper because of the lack of evidentiary support for it. However, there was no objection to the question. This was not a question so prejudicial that a sustained objection and an instruction to the jury to disregard it would not have cured it. The objection was waived

by the failure to lodge a timely objection at trial. *State v. Guloy,* 104 Wn.2d 412, 421, 705 P.2d 1182 (1985).

## CROSS EXAMINATION ON PREARREST SILENCE

In his telephone conversations with Officer Webb, Hamilton did not assert his claim that the shooting was accidental. In cross examination of Hamilton, for the purpose of attacking the validity of his claim, the deputy prosecutor questioned him about his failure to tell Webb of his claim the shooting was accidental. Hamilton contends this was a violation of due process as guaranteed by the Fourteenth Amendment and article 1, section 3 of the Washington Constitution, but his argument is actually based on the Fifth Amendment privilege against self–incrimination.

Hamilton acknowledges in his argument that this is a case of prearrest silence, but argues that the reasoning of post–arrest silence cases such as *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) (use of a defendant's silence after receiving *Miranda*[1] warnings for impeachment purposes violated due process) and *State v. Davis,* 38 Wn. App. 600, 686 P.2d 1143 (1984) (state constitution protects a defendant's post–arrest silence even in the absence of *Miranda* warnings) is nevertheless applicable. He relies upon *State v. Lewis,* 32 Wn. App. 13, 645 P.2d 722, *review denied,* 98 Wn.2d 1004 (1982) to support his conclusion that the telephone conversations he had with Officer Webb amounted to a custodial interrogation. *Lewis* does say at page 18 that *Miranda* protections apply, even prior to arrest, when there is probable cause to arrest and the questioning is designed to develop additional incriminating information.

Based upon *Lewis,* Hamilton claims the telephone conversations with Officer Webb amounted to custodial interrogation and therefore his prearrest silence should be treated the same as post–arrest silence is treated under the Fifth Amendment.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Dealing first with the question of custodial interrogation, the facts of this case readily distinguish it from *State v. Lewis, supra.* In *Lewis,* the law enforcement officers had probable cause to arrest Lewis and set up an interrogation which was to be recorded and which was designed to develop additional incriminating information. The *Lewis* court was concerned about permitting law enforcement officers to maneuver around Fifth Amendment rights by the simple expedient of deferring making an arrest. In the case sub judice, the factors which influenced the *Lewis* court are not present. The police had probable cause to arrest Hamilton, but the telephone conversations were all initiated by Hamilton. Furthermore, Officer Webb studiously avoided engaging in any questioning of Hamilton regarding the details of the crimes involved. Webb told Hamilton he was a suspect and asked him if they could meet and discuss the matter, but Hamilton put him off. Webb could not at the moment place Hamilton under arrest because he did not know where he was. On this fact pattern, Hamilton was not in custody, and there was no interrogation as contemplated by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).'

■ This case involves only prearrest silence. In *Jenkins v. Anderson,* 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980), Anderson was cross–examined about the fact that he did not claim self–defense until he turned himself in 2 weeks after the stabbing. In closing argument, the prosecutor again referred to Anderson's failure to earlier tell officers about his self–defense claim. In the Supreme Court, Anderson claimed both Fifth and Fourteenth Amendment violations. The Court held at 238:

> Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth–finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility.

The Supreme Court also rejected Anderson's claim that

use of prearrest silence to impeach his credibility denied him the fundamental fairness guaranties of the Fourteenth Amendment.

We have reviewed the assignments of error and arguments asserted in Hamilton's pro se brief. We find them to be clearly nonmeritorious, requiring no further discussion.

The convictions are affirmed.

WILLIAMS and WEBSTER, JJ., concur.