[No. 22169-8-I. Division One. August 14, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT CHARLES GROVER, *Appellant*.

*Paris K. Kallas,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *S. Gene Willett, Deputy,* for respondent.

FORREST, J.—Robert Grover appeals from his conviction on two counts of first degree robbery. We affirm.

Angela Hughes was home with her baby on November 12, 1987, while her friend, Willie Price, was at the store. Carlanne Gardner and Michael Parker, Price's stepchildren, stopped by to collect money from Hughes for baby–sitting. Shortly after Gardner and Parker arrived, there was a knock at the door. When Hughes answered the door, two men asked to see Michael Parker. One of the men displayed a hatchet, grabbed Hughes and pulled her into a bedroom. The man had Hughes get on her knees, then demanded money. He hit Hughes on the head and body with the hatchet, threatening to kill her and her baby. During the attack, an artery in Hughes' arm was cut. Some of the blood stained her attacker's pants.

When Price returned from the store, the second man pulled a knife, forcing Price to lie on the floor. He took Price's wallet. When Michael entered the room, he was forced to lie down, but was neither attacked nor robbed. Michael told Hughes and Price to give the men money. The men left, taking Price's money and Hughes' television set. Hughes call 911. When the police arrived, Hughes described the robbers. Gardner gave a statement to Detective Stewart, identifying the robbers by name as Robert Grover and Kenneth Peeler. She also mentioned that Michael had gone to chase the robbers on foot. Sergeant Bailey left to search for Michael's distinctive red and white Cadillac, well known to the police, to obtain more information about the robbers.

Sergeant Bailey found Michael's car within a few miles of Hughes' home. As he approached, a man fitting the description of one of the robbers emerged from the car. He was later identified as Grover. When the man made suspicious movements, Bailey drew his revolver and ordered him to halt. Nearing the car, Bailey noticed the suspect's pants were stained with blood. He noted that one of the car's occupants was wearing a gray jacket, just as described by Hughes. Bailey also saw a knife and bloody hatchet in open

view between the front seats. The other occupants of the car were James Parker, Michael's brother, and Kenneth Peeler.

Carlanne Gardner testified under a grant of immunity after she was arrested on a material witness warrant. Gardner said she vaguely remembered giving a statement to the police after the robbery. However, she denied any memory of the robbery or her identification of Grover and Peeler as the robbers. She claimed she was intoxicated while the robbery was in progress. Sergeant Bailey testified that Gardner was not intoxicated when he interviewed her at the scene. The prosecuting attorney asked Gardner if she was afraid to testify because she had received threats from the defendants. She denied receiving any threats but said she was reluctant to testify.

Grover testified in his own behalf, denying participation in the robbery. The State then presented its rebuttal. The trial court admitted Detective Stewart's testimony as to Gardner's statement to him under ER 801(d)(1)(iii). The court also admitted Stewart's testimony because it concluded Gardner's refusal to testify was caused by threats from the defendants. Stewart testified that at the scene, Gardner told him Grover and Peeler had committed the robbery. Grover appeals from his conviction, claiming that Gardner's statement was inadmissible hearsay and that his right of confrontation under the sixth amendment to the United States Constitution and Washington State Constitution article 1, section 22 was violated since Gardner allegedly could not remember identifying him as one of the robbers. He further asserts that evidence inculpating him in the robbery was illegally seized.

## ADMISSIBILITY OF STEWART'S TESTIMONY

The admission of Detective Stewart's testimony as to the statements made to him by Gardner must meet the requirements of the confrontation clause and ER 801(d)(1), which reads in part:

**Statements Which Are Not Hearsay.** A statement is not hearsay if—

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (iii) one of identification of a person made after perceiving him; . . .

This rule, read literally, is dispositive. It excepts from hearsay treatment any statement identifying an accused made by a perceiving witness who testifies at trial and is subject to cross examination. Appellant argues ER 801(d)(1) should be limited to admitting only statements of identification made by a witness during a lineup or upon viewing a photographic montage. We decline appellant's invitation to so narrowly construe the rule.

*State v. Simmons,*[1] a prerule case relied upon by appellant, does not support such a cramped interpretation of ER 801(d)(1). In *Simmons,* the witnesses to a robbery could not identify the defendant at trial, but had identified him in a police lineup. The trial court admitted into evidence three photographs of the lineup in which the identification was made. On appeal, the court approved admission of the evidence.[2] Since the witnesses were available for cross examination, the common hearsay dangers were not present, nor was the defendant's right of confrontation violated.[3] *Simmons* contains no suggestion that other forms of identification are inadmissible due to endangerment of a defendant's confrontation right.

*United States v. Owens*[4] construes the federal equivalent of ER 801(d)(1)(iii) contrary to appellant's position. In *Owens,* a correctional counselor at a federal prison was brutally beaten by an inmate with a metal pipe. As a result of his injuries, the counselor's memory was severely

---

[1]63 Wn.2d 17, 385 P.2d 389 (1963).

[2]*Simmons,* at 20.

[3]*Simmons,* at 22.

[4]484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988).

impaired. He was able to describe the attack, name his attacker and identify him from a photographic montage to an FBI agent. At trial, the victim was only able to remember from his hospital stay his visit with the FBI agent, and could not remember whether any visitor had suggested that the defendant was his attacker.

 The court held that the victim's testimony was not hearsay under Fed. R. Evid. 801(d)(1)(C) and that his memory loss did not violate the cross examination requirement contained in the rule.[5] Here, as in *Owens,* Gardner's out–of–court statement included a verbal identification of the attacker. Further, Gardner similarly remembered giving her statement, testified at trial and was subject to cross examination. Although ER 801(d)(1)(iii) is most frequently applied to photographic identifications,[6] appellant has cited no cases which exclude verbal identifications under the rule.[7] We find *Owens* dispositive of appellant's argument on ER 801.

---

[5]The *Owens* Court wrote at pages 561–62:

"It seems to us that the more natural reading of 'subject to cross–examination concerning the statement' includes what was available here. Ordinarily a witness is regarded as 'subject to cross–examination' when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross–examination within the intent of the rule no longer exists. But that effect is not produced by the witness's assertion of memory loss—which, as discussed earlier, is often the very result sought to be produced by cross–examination, and can be effective in destroying the force of the prior statement. Rule 801(d)(1)(C), which specifies that the cross–examination need only 'concer[n] the statement,' does not on its face require more."

[6]*See, e.g., State v. Jenkins,* 53 Wn. App. 228, 766 P.2d 499, *review denied,* 112 Wn.2d 1016 (1989); *State v. Hendrix,* 50 Wn. App. 510, 749 P.2d 210, *review denied,* 110 Wn.2d 1029 (1988); *State v. Vaughn,* 36 Wn. App. 171, 672 P.2d 771 (1983), *aff'd,* 101 Wn.2d 604, 682 P.2d 878 (1984).

[7]The only authority cited by appellant which would support a narrow interpretation of the Washington rule is from the official comment to the Oregon rule which parallels ER 801(d)(1)(iii). The commentary states:

The subparagraph should not be read literally. It is aimed at situations where the declarant is shown a person or photograph of a person and makes an

■ The Supreme Court also held there was no violation of the defendant's right of confrontation since the declarant was in court and subject to cross examination.[8] The defendant claimed his right to cross examination was frustrated by the witness's memory loss. In response, the Court stated that the confrontation clause guarantees only an opportunity for effective cross examination, not cross examination effective in whatever way and to whatever extent the defense might wish.[9] The Court explicitly rejected the view of the court of appeals that such testimony must be examined for "indicia of reliability",[10] or "particularized guarantees of trustworthiness",[11] writing: "We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination."[12] Washington cases take a similar view.[13]

identification as a result of that showing ('that is the person who did it'). It is not aimed at situations where, after an event, the declarant simply makes a statement which identifies the person involved ('X did it').
Oregon Evidence Code 801(4)(a)(C) Legislative Commentary, as quoted in L. Kirkpatrick, *Oregon Evidence* 329 (1982). No such limitation appears within the Washington comment to ER 801(d)(1)(iii). Neither the legislative history nor the Advisory Committee's Notes to the federal rule suggests it should be so narrowly limited. *See* 11 J. Moore & H. Bendix, *Federal Practice* § 801.01[6] (2d ed. 1989).

[8]*Owens*, at 564.

[9]*Owens*, at 559.

[10]*Dutton v. Evans*, 400 U.S. 74, 89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).

[11]*Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

[12]*Owens*, at 560.

[13]*See State v. Simmons, supra; State v. Cooley*, 48 Wn. App. 286, 738 P.2d 705 (no additional indicia of reliability required to be shown under the confrontation clause when the child declarant testified at trial and was subject to cross examination), *review denied*, 109 Wn.2d 1002 (1987); *State v. Guloy*, 104 Wn.2d 412, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). *See also People v. Green*, 3 Cal. 3d 981, 479 P.2d 998, 1003, 92 Cal. Rptr. 494 (1971) (confrontation right not violated despite admission of an officer's testimony as the declarant's

Detective Stewart's testimony as to Gardner's statement did not violate Grover's confrontation right and was properly admitted under ER 801(d)(1)(iii).

Grover also asserts the trial court's conclusion that Gardner was afraid to testify because of threats is not supported by the record, and that the court erred in failing to hold an evidentiary hearing prior to reaching its conclusion. He correctly notes that some courts require an evidentiary hearing before a defendant's right of confrontation can be deemed waived due to the accused's coercion of a witness's refusal to testify.[14] The court, however, also admitted Detective Stewart's testimony as to Gardner's statement under ER 801(d)(1)(iii). Having concluded its admission on that basis was proper, we do not need to resolve this issue.

### ILLEGAL SEIZURE ISSUE

Grover's pro se brief contends that evidence inculpating him in the robbery was illegally seized by the police in violation of the fourth amendment to the United States Constitution and article 1, section 7 of our constitution. He claims the trial court committed reversible error in failing to suppress the evidence and challenges the court's finding that he had no privacy expectation in an automobile owned by another.

Even assuming Grover had an expectation of privacy,[15] no unreasonable search or seizure occurred. An officer making an investigative stop must have "specific and

---

extrajudicial statement when the declarant, who suffered an apparent lapse of memory, was present at trial and subject to cross examination).

[14]See United States v. Mastrangelo, 693 F.2d 269, 273 (2d Cir. 1982); United States v. Balano, 618 F.2d 624, 629 (10th Cir. 1979).

[15]See State v. Simpson, 95 Wn.2d 170, 622 P.2d 1199 (1980) (a defendant has automatic standing to challenge an allegedly illegal search or seizure where he is charged with possession of the very item seized); State v. White, 40 Wn. App. 490, 699 P.2d 239 (it may be arguable under Simpson that first degree robbery includes "possession" of the weapon as an essential element), review denied, 104 Wn.2d 1004 (1985).

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Footnote omitted.)[16] An officer has an articulable suspicion if there is a substantial possibility that criminal conduct has occurred, or is about to occur.[17]

Here, Sergeant Bailey knew Michael Parker went to find the robbers. He suspected Parker might have been a participant and knew he was a witness. He recognized Parker's distinctive Cadillac. Upon locating the car, he noticed three passengers, mistaking one for Michael Parker. Bailey noticed bloodstains on Grover's pants after Grover got out of the car. Kenneth Peeler was wearing a gray jacket matching the description given by a victim. Sergeant Bailey *could* reasonably surmise there was a substantial possibility that the occupants were involved in criminal conduct. Hence, the initial detention did not violate Grover's rights under the Fourth Amendment, nor under Const. art. 1, § 7.

■ Sergeant Bailey observed the hatchet Grover contends should have been suppressed while standing outside the passenger door of the car. It was atop the console area of the car. Because detection of the hatchet occurred from a nonconstitutionally protected area, the "open view" rule applies. "Hence, if an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car. Because there has been no search, article 1, section 7 is not implicated."[18]

■ A subsequent search of the car produced two knives. The defendants were under arrest during the search. The police may conduct a warrantless search of an automobile

---

[16]*Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

[17]*State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986); 3 W. LaFave, *Search and Seizure* § 9.2, at 65 (1987).

[18]*Kennedy*, at 10; *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).

after arrest of its occupants.[19] Grover's Fourth Amendment and article 1, section 7 rights were not violated by the search.

Affirmed.

GROSSE, A.C.J., and SWANSON, J., concur.

Review denied at 113 Wn.2d 1032 (1989).

---

[19]*State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986); *State v. Patterson,* 112 Wn.2d 731, 735, 774 P.2d 10 (1989).