[No. 22048–9–I.   Division One.   October 23, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT CHARLES GROVER, *Defendant,* KENNETH PEELER, *Appellant.*

924

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia S.C. Gannett, Deputy,* for respondent.

PEKELIS, J.—Kenneth Peeler appeals his conviction for first degree robbery. He contends that the trial court erred in denying his motion to dismiss for insufficient evidence. He also contends that he was denied a fair trial and effective assistance of counsel. We affirm.

I

1. *Procedural facts.*

Peeler and his codefendant, Robert Grover, were charged with two counts of first degree robbery. Grover waived his

right to a jury. The trial court ruled that Peeler and Grover would be tried simultaneously, but the court would decide Grover's case and the jury Peeler's case. Peeler neither objected to this procedure, nor moved to sever his trial.

The State presented its case in chief against both defendants. After the State rested, Peeler moved for dismissal based on insufficient evidence. The trial court denied his motion to dismiss.

With the jury still present, Grover began his defense. Counsel for Peeler did not object. Grover testified in his own behalf, essentially denying that he and Peeler had committed the robbery. He presented no other witnesses.

The following day, the State presented two rebuttal witnesses, again with the jury present. Peeler did not object to their testifying in front of the jury, but did object to the second rebuttal witness on the grounds that the witness' testimony was inadmissible hearsay. The trial court overruled Peeler's objection, and defense counsel cross-examined the witness.

Grover presented one additional witness, and then counsel for the State and Peeler made their closing arguments. While the jury deliberated over Peeler's verdict, the judge considered Grover's verdict. The jury found Peeler guilty as charged, and the court found Grover guilty as charged.

2. *Substantive facts.*

On November 12, 1987, Angela Hughes was home with her baby. While Hughes' friend, Willie Price, was at the store, Carlanne Gardner and Michael Parker, Price's stepchildren, arrived. Shortly thereafter, there was a knock at the door. Hughes answered the door to two men who asked to see Michael.

When Hughes opened the door to let Michael out, one of the men produced a hatchet, grabbed Hughes, and pulled her into a bedroom. The man made Hughes get down on her knees and demanded money. He hit Hughes on the head and body with the hatchet, threatening to kill her and her baby. In the attack, an artery in Hughes' arm was cut,

and she bled profusely. Some of the blood stained her attacker's pants.

When Price returned, a second man, wielding a knife, forced him to lie down and took his wallet. Then Michael entered the room. He too was forced to lie down, but was not attacked or robbed. The men left together with Price's money and Hughes' television set.

Hughes called the police who arrived within 1 minute. Hughes described the robbers: the man with the hatchet was a skinny black man with a beard who wore blue pants and a red shirt. The man with the knife was also skinny and black, but he was shorter than the man with the hatchet, had short wavy hair, and wore dark pants and a blue or gray dress jacket.

Gardner also gave the police a statement, identifying the robbers by name. She told the police that her brother Michael had left the scene to "chase" the robbers on foot.

The police searched the area near Hughes' home with no success. Because Michael was known to the police and drove a distinctive red and white Cadillac limousine, Sergeant Harry Bailey decided to search for Michael's car in hopes of obtaining more information about the robbers.

Within an hour, Sergeant Bailey found Michael's car parked a few miles from Hughes' home. As he approached, a man fitting the description of one of the robbers emerged from the car. When the suspect made furtive motions, Sergeant Bailey drew his revolver and ordered him to halt.

Nearing the car, Sergeant Bailey noticed that the suspect's pants were freshly stained with blood. He also observed that one of the occupants of the car was wearing a gray leather jacket. Sergeant Bailey then saw a bloody hatchet and knife between the front seats. A third man sitting in the car was later identified as James Parker, Michael Parker's brother.

When additional officers arrived, all three men were arrested. Neither Peeler nor Grover gave their correct names when they were arrested.

Within hours of the robbery, Hughes was shown a photographic montage and tentatively identified Peeler as one of the robbers. At a lineup 5 days later, Hughes picked someone who looked most like her attacker, but she failed to pick Grover, although he was in the lineup.

At trial, Hughes testified that Peeler and Grover were the men who attacked and robbed her. However, on cross examination, she admitted that they merely "resemble[d]" the men who were in her home, and she could not be certain "beyond a reasonable doubt" that Peeler was one of the assailants. On redirect examination, Hughes again identified the defendants as the men who had robbed her.

Carlanne Gardner testified under a grant of immunity after she was arrested on a material witness warrant. Gardner denied any memory of the robbery or her statement to the police identifying Peeler and Grover as the robbers. She claimed that on the day of the robbery she was intoxicated. However, Sergeant Bailey testified that Gardner was not intoxicated when he interviewed her at the scene.

The prosecuting attorney asked Gardner if she was afraid to testify because she had received threats from the defendants. Gardner denied she had received any threats but admitted she was reluctant to testify. The prosecutor then asked:

Q. (By Ms. Bremner) You are afraid to testify. Have you received any phone calls from Mr. Grover in the last few weeks?

A. No. I don't even have a phone.

Q. Have you received information or any threats from either of these defendants in the last couple of weeks?

A. No.

Q. Have you received it [sic] through third persons?

A. No.

Q. Didn't you tell the detectives today, when you came in, that they had been calling you?

A. No, no, I didn't. No, I did not. I told them today that I don't like being put on the spot for any reason because something could happen in a situation like this.

Q. Didn't you tell the detectives that Mr. Grover had called and threatened to kill your child?

MR. GROVER: What?

THE WITNESS: No, I didn't say that. That is a lie.
MR. GROVER: It sure the hell is.
THE WITNESS: I didn't even say that.

James Parker also testified under a grant of immunity after he was arrested on a material witness warrant. Parker first claimed he could not remember the details of what happened before his arrest because he had been drinking that day. Nonetheless, he admitted that he told police on the day of the robbery that the defendants, Michael Parker and Gardner all left his house around noon to go to "Angie's" (Angela Hughes) in Michael's red and white Cadillac limousine. Peeler was wearing a gray suede jacket. About an hour later, the defendants returned, immediately went upstairs, and then came back down and told Parker they wanted a ride. They left in Michael's car and all three were arrested within a few minutes.

Grover testified in his own behalf, denying participation in the robbery. He claimed that he, Peeler and Parker drove Michael Parker's car to make a drug sale in another neighborhood at the time of the robbery. Grover asserted that he participated in this drug sale as part of his work as a police informant.

The State presented its rebuttal evidence. Over defense counsel's hearsay objection, Detective Stewart testified that at the scene, Gardner told him that Peeler and Grover had committed the robbery.

In her closing argument to the jury, the prosecutor argued that Gardner did not identify the defendants at trial because she feared them:

> Carlanne Gardner was able to identify Mr. Grover and Peeler right after the crime and she told Detective Stewart that it was Peeler and Grover. When she testified in Court she had to be arrested to be brought to Court, as did James [Parker]. Her fear of reprisal is obvious. Her fear for herself and her family is obvious. She does not want to be the one who points these two men out, but she was willing to tell a detective that back on November 12th.

In her argument on rebuttal, the prosecuting attorney again implied that Gardner was afraid to testify:

Michael Parker didn't do this. Carlanne didn't want to be here and she wants to have nothing to do with this, nothing, because she witnessed the crime. What does she have to gain by testifying? Nothing. She could only lose. She initially told the detectives that she knew them. She identified Mr. Peeler because she knows him and she identified Mr. Grover. But since that time her memory, by choice, has become faulty. I think it is pretty clear why.

## II

Peeler first contends that the State did not establish beyond a reasonable doubt that Peeler committed the robbery. He argues that Hughes' identification of Peeler was equivocal and uncertain, and the State's circumstantial evidence, at best, merely placed Peeler in the vicinity of the robbery. He asserts that this evidence is insufficient to support a conviction. Peeler's contention is without merit.

In reviewing a challenge to the sufficiency of the evidence, this court determines whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hendrix,* 50 Wn. App. 510, 514, 749 P.2d 210 (citing *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) and *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980)), *review denied,* 110 Wn.2d 1029 (1988).

"A pretrial identification of the accused is admissible as substantive evidence of identity despite the witness's inability to make an in-court identification." *Hendrix,* 50 Wn. App. at 514. Uncertainty or inconsistency in identification testimony "goes only to its weight, not its admissibility." *State v. Vaughn,* 101 Wn.2d 604, 610, 682 P.2d 878 (1984).

Here, Hughes identified Peeler in the photographic montage within hours of the robbery and then again at trial. Her initial descriptions of the assailants matched the appearance of Grover and Peeler at the time they were arrested. Parker's testimony corroborated Hughes' description of her assailants and placed both defendants at the scene on the day of the robbery. Finally, Grover's bloodied

pants and the bloody hatchet and knife found in the car with the defendants near Hughes' home shortly after the robbery provided strong circumstantial evidence. On this record, the jury had sufficient evidence to convict Peeler.

## III

Peeler next contends that he was denied a fair trial because the trial court allegedly committed several evidentiary errors. He argues that these errors individually and cumulatively require reversal.

1. *Failure to sustain defense counsel's objection to a witness testifying about Gardner's pretrial identification of the defendants.*

Peeler contends that the trial court erred by permitting a police officer to testify that Gardner had identified Peeler and Grover as the robbers. At trial, Gardner testified that she could not remember identifying the defendants as the robbers when she was interviewed by Detective Larry Stewart at the scene. In fact, Gardner testified she could barely remember anything about the robbery.

In rebuttal, the State called Detective Stewart who testified that he had interviewed Gardner at the scene within minutes of the robbery, and she had identified Peeler and Grover as the robbers. Peeler objected, but the trial court, accepting the State's argument, admitted Detective Stewart's testimony under ER 801(d)(1)(iii).

ER 801(d)(1)(iii) provides:

A statement is not hearsay if—
(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (iii) one of identification of a person made after perceiving him . . .

ER 801(d)(1)(iii) is consistent with prior Washington case law. *See State v. Simmons,* 63 Wn.2d 17, 385 P.2d 389 (1963). In *Simmons,* the court held that extrajudicial statements of identification are not hearsay even though the declarant fails to identify the defendant at trial. In admitting the evidence, the Supreme Court reasoned that evidence of pretrial identification has greater probative value

than a courtroom identification because the witness' memory is fresher and the identification occurs before the witness can be influenced to change his mind. *Simmons,* 63 Wn.2d at 19–21. In addition, the Supreme Court held that the evidence does not present the dangers of hearsay as long as the witnesses are "present in court and subject to . . . cross–examination". *Simmons,* 63 Wn.2d at 22.

■■ Peeler first argues that ER 801(d)(1)(iii) does not apply because the State introduced evidence of the statement of identification through a witness other than the declarant. In *Simmons,* the Supreme Court did not determine whether ER 801(d)(1)(iii) permitted the admission of identification testimony through a third party. *Simmons,* 63 Wn.2d at 19 n.2. A recent Washington case has since resolved this question, however. In *State v. Jenkins,* 53 Wn. App. 228, 233 n.3, 766 P.2d 499, *review denied,* 112 Wn.2d 1016 (1989), the court held that ER 801(d)(1)(iii) does not require that the statements be elicited from the declarant but may be admitted through testimony of another person who heard or saw the identification. Thus, the fact that Gardner's out–of–court identification of the defendant was admitted through a witness other than the declarant did not violate ER 801(d)(1)(iii). *See also United States v. Owens,* 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988); *United States v. Elemy,* 656 F.2d 507, 508 (9th Cir. 1981).[1]

---

[1] In addition, Peeler argues that ER 801(d)(1)(iii) should apply only to statements of identification in the context of a photographic montage or lineup. In support of his argument, Peeler cites the comment to the Oregon Evidence Code 801(4)(a)(C) which parallels Washington's ER 801(d)(1)(iii). The commentary states that the rule should not be read literally, but should apply only to "situations where the declarant is shown a person or photograph of a person and makes an identification as a result of that showing". Legislative Commentary, Oregon Evidence Code 801(4)(a)(C), *quoted in* L. Kirkpatrick, *Oregon Evidence* 329 (1982).

We decline to adopt such a narrow interpretation of ER 801(d)(1)(iii). Although the rule is frequently applied to statements of identification from a photographic montage or lineup, neither the plain terms of ER 801(d)(1)(iii) nor the Washington comment to it limit its application in the way Peeler urges. *Accord, State v. Grover,* 55 Wn. App. 252, 777 P.2d 22 (1989).

Peeler also argues that Detective Stewart's testimony was inadmissible because in failing to remember either her statement or the robbery, Gardner was not "subject to cross examination" within the meaning of ER 801(d)(1)(iii) and the defendant's constitutional right of confrontation under the United States and Washington State Constitutions. However, recent authority from the United States Supreme Court has specifically resolved this issue.

█ In *United States v. Owens, supra,* the Court held that admission of testimony concerning an out–of–court identification of the defendant by a witness who could not remember making the identification did not violate the Sixth Amendment right of confrontation or Federal Rule of Evidence 802. The *Owens* Court held that the Sixth Amendment

> guarantees only 'an *opportunity* for effective cross–examination, not cross–examination that is effective in whatever way, and to whatever extent, the defense might wish.'"

*Owens,* 98 L. Ed. 2d at 957 (quoting *Kentucky v. Stincer,* 482 U.S. 730, 739, 96 L. Ed. 2d 631, 107 S. Ct. 2658 (1987)). In rejecting the argument that a witness' loss of memory violates the Sixth Amendment, the Court noted that "[t]he weapons available to impugn the witness's statement when memory loss is asserted will of course not always achieve success, but successful cross–examination is not the constitutional guarantee." *Owens,* 98 L. Ed. 2d at 958.[2]

Under the facts presented here, we find *Owens* to be dispositive. First, Gardner was present at trial and subject to

---

[2]The *Owens* Court also held that the statement was admissible under the federal equivalent of Washington's ER 801(d)(1)(iii), Fed. R. Evid. 801(d)(1)(C):

> It seems to us that the more natural reading of "subject to cross–examination concerning the statement" includes what was available here. Ordinarily a witness is regarded as "subject to cross–examination" when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross–examination within the intent of the rule no longer exists. But that effect is not produced by the witness's assertion of memory loss—which, as discussed earlier, is often the very result sought to be produced by cross–examination, and can be effective in destroying the force of

cross examination by defense counsel. Like the witness in *Owens,* Gardner denied any memory of the contents of her statement, but she acknowledged that she had given a statement to Detective Stewart after the robbery. Her loss of memory did not eliminate the opportunity for meaningful cross examination and, in undermining the force of her prior statement, arguably produced the result sought by the defense. Thus, admission of Detective Stewart's testimony recounting Gardner's identification of the defendants violated neither the constitutional right of confrontation nor ER 801(d)(1)(iii).

2. *Failure to excuse the jury after Peeler rested.*

Peeler next contends that the trial court erred in permitting the jury to hear evidence presented at Grover's bench trial after Peeler had rested.[3] Peeler argues that the trial court should not have permitted his jury trial and Grover's bench trial to proceed simultaneously. He asserts that at the very least, the trial court should have excused the jury after Peeler rested and before Grover put on his defense.

Superior Court Criminal Rule 4.4(a)(1) requires a defendant to move for severance before trial or at the close of all the evidence "if the interests of justice require." CrR 4.4(a)(1) specifically warns that severance is waived "if the motion is not made at the appropriate time." Whether a motion for separate trials is granted is "entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion.'" *State v. Grisby,* 97 Wn.2d 493, 507, 647 P.2d 6 (1982) (quoting *State v. Barry,* 25 Wn. App. 751, 756, 611 P.2d 1262 (1980)), *cert. denied sub nom. Frazier v. Washington,* 459

---

the prior statement. Rule 801(d)(1)(C), which specifies that the cross–examination need only "concer[n] the statement," does not on its face require more. *Owens,* at 561–62.

[3]The State argues that the trial court's failure to excuse the jury was not error because Peeler did not rest again after his motion to dismiss was denied. The State's argument is overly technical. Reference to the record demonstrates that the trial court understood Peeler had rested after denying his motion to dismiss.

U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983); *accord,* *State v. Anderson,* 107 Wn.2d 745, 753, 733 P.2d 517 (1987). In order to demonstrate abuse of discretion, the defendant must be able to point to specific prejudice. *Grisby,* 97 Wn.2d at 507.

Peeler did not object to the trial court's proposed joint–trial procedure and, in fact, failed to move for severance of his trial. He seeks to avoid the consequences of his failure to comply with CrR 4.4 "by elevating his challenge 'into the constitutional realm'." *State v. Scott,* 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (quoting *State v. Louie,* 68 Wn.2d 304, 314, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042, 18 L. Ed. 2d 610, 87 S. Ct. 1501 (1967)).[4]

■ Here, we need not reach the question whether the error is one of constitutional magnitude. The record clearly demonstrates that the trial court's failure to sever the trials of Peeler and Grover at the commencement of trial was not error at all. Separate trials are not favored in Washington and are required only in cases where an out–of–court statement by a codefendant directly or indirectly incriminates the defendant. *Grisby,* 97 Wn.2d at 506–07. Peeler concedes that Grover's testimony did not incriminate him. Thus, the trial court was not required to sever the trials of Peeler and Grover.

■ Nor did the trial court err in failing to excuse the jury after Peeler had rested, as Peeler contends. He asserts that had the trial court excused the jury, it would never have heard the unfavorable testimony of Detective Stewart, the State's rebuttal witness. We reject Peeler's attempt to saddle trial courts with the impossible burden of second–guessing defense counsel's tactical decisions. Here, although Peeler rested, he failed to request that the jury be excused, and did not object to Grover's testifying or move to strike

---

[4]We may review claims of constitutional error asserted for the first time on appeal if the error is of constitutional magnitude. *State v. Scott,* 110 Wn.2d at 688 (citing *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967)).

his testimony. Moreover, because Grover's testimony exculpated Peeler, the trial court could have correctly assumed that defense counsel made a strategic decision to allow Grover's trial to proceed before the jury. On this record, the trial court did not err by failing to excuse the jury after Peeler had rested.

3. *Failure to prevent the prosecuting attorney from inquiring about alleged threats against a witness.*

Peeler contends that the trial court erred by permitting the prosecuting attorney to ask Gardner if she had received threats from the defendants prior to her testifying. Peeler argues that the trial court should have determined, outside the presence of the jury, whether the State had evidence of actual threats before permitting the prosecution's examination.

The State argues that the witness' inability to recall the event at trial after identifying the defendants at the scene was suspicious, justifying impeachment. The State contends that the prosecutor's examination of Gardner about Grover's alleged threats was permissible because the State had produced sufficient independent evidence of Grover's intimidating behavior toward Gardner.

The record does not support the State's position. After Gardner denied she had been threatened, the prosecutor made no attempt to impeach Gardner's denial by establishing that Gardner had told the detectives, as the prosecutor asserted, that Grover had threatened her. A prosecutor has a duty to refrain from using statements which are not supported by the evidence and which tend to prejudice the defendant. *State v. Hamilton,* 47 Wn. App. 15, 18, 733 P.2d 580 (1987). The State did not recall the detective to contradict Gardner's denial and there was no other evidence which was probative of the alleged threats. Thus, the prosecutor's examination of Gardner and her arguments to the jury may not have been proper. Nevertheless, this conduct, if error, does not warrant reversal.

Under *State v. Belgarde,* 110 Wn.2d 504, 507–08, 755 P.2d 174 (1988), on which Peeler relies, "prosecutorial

misconduct [that] is so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct" requires reversal only if there is a "'substantial likelihood' the prosecutor's comments affected the verdict." In view of the entire record here, the prosecutor's conduct cannot be said to have been so "flagrant and ill intentioned" that no curative instruction would have been effective. The prosecutor's repeated questions about the alleged threats provided defense counsel with numerous opportunities to object and request a curative instruction. *See Hamilton,* 47 Wn. App. at 18. Peeler failed to object to either the prosecutor's examination or her closing argument. Thus, any objection was waived by the failure to lodge a timely objection at trial. *Hamilton,* 47 Wn. App. at 18–19 (citing *State v. Guloy,* 104 Wn.2d 412, 421, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986)).

Even without defense counsel's objections, the prosecutor's examination yielded no helpful responses. In addition, as in *Hamilton,* the trial court specifically instructed the jury that counsel's remarks, statements and arguments were not evidence and should be disregarded if unsupported by the evidence.

Finally, Gardner's testimony was not the only evidence linking Peeler to the robbery. As discussed *infra,* there was ample properly admitted evidence connecting Peeler to the robbery upon which the jury most probably based its verdict. Thus, based on the entire record, we conclude that Peeler should have objected and that, in any event, he was not prejudiced by the prosecutor's arguably improper comments.

Since Peeler has not demonstrated any error affecting the fairness of the trial or the reliability of the verdict, he is not entitled to a new trial.

## IV

Peeler last contends that he was denied effective assistance of counsel. He argues that his attorney's performance

was deficient on two grounds: (1) his attorney should have requested that the trial court excuse the jury prior to the presentation of Grover's defense; and (2) his attorney should have objected to the prosecutor's questions and argument about Gardner allegedly receiving threats from the defendants.

■ In order to establish a denial of effective assistance of counsel, the defendant must demonstrate that (1) his attorney's performance was deficient and (2) his attorney's deficient performance prejudiced him. *State v. Thomas,* 109 Wn.2d 222, 225–26, 743 P.2d 816 (1987) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). A defendant can establish prejudice only when his attorney's "errors [are] so serious as to deprive the defendant of a fair trial". *Thomas,* 109 Wn.2d at 225–26 (quoting *Strickland,* 466 U.S. at 687).

While the performance of Peeler's attorney was arguably deficient, her performance did not so prejudice Peeler as to deprive him of a fair trial. Grover's testimony did not implicate Peeler in the robbery and, in fact, exculpated him. Although Detective Stewart's rebuttal testimony about Gardner's identification directly implicated Peeler, it was not the only evidence linking Peeler to the crime. Moreover, there is no reasonable probability that the jury based its verdict on the prosecutor's allegations that the defendants had threatened witnesses because there was substantial properly admitted evidence to support the jury's verdict. On this record, Peeler has not established he is entitled to a new trial because he was denied effective assistance of counsel.

Affirmed.

COLEMAN, C.J., and GROSSE, J., concur.

Reconsideration denied November 30, 1989.

Review denied at 114 Wn.2d 1008 (1990).