181 P.3d 1 (2008)
STATE of Washington, Respondent,
v.
Justin Bryce BURKE, Petitioner.
No. 78528-7.
Supreme Court of Washington, En Banc.
Argued March 20, 2007.
Decided March 13, 2008.
*3 John Henry Browne, Emma C. Scanlan, Law Offices of John Henry Browne, PS, Seattle, WA, for Petitioner/Appellant.
Thomas Marshal Curtis, Seth Aaron Fine, Snohomish County Prosecutor's Office, Everett, WA, for Appellee/Respondent.
CHAMBERS, J.
¶ 1 Justin Burke went to a party. There he met and had sex with J.S.J.S. was 15 years old at the time and Burke was 22. He was later charged with third degree rape of a child. At trial, Burke argued that J.S. had told him that she was of legal age to consent, and he reasonably believed her. This would present a statutory defense to third degree rape of a child. As part of its case in chief, the State contended that Burke, when given an opportunity to tell his side of the story, terminated his interview with the police without ever mentioning that he believed J.S. was of age.
¶ 2 Our constitutions protect the right of an accused to remain silent. Griffin v. California, 380 U.S. 609, 614-15, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); State v. Easter, 130 Wash.2d 228, 235, 922 P.2d 1285 (1996). When defendants take the stand, their prearrest silence may be used to impeach their testimony, "but their silence may not be used as substantive evidence of guilt. See State v. Clark, 143 Wash.2d 731, 756, 24 P.3d 1006 (2001). A mere reference to a defendant's silence may be permissible. Because the State invited the jury to infer guilt from Burke's silence, and attempted to use his silence as substantive evidence of his guilt, we reverse the courts below and vacate Burke's conviction, without prejudice.

I
¶ 3 J.S.'s older sister, Jaime, and her friend, Chelsea, shared a basement apartment in the home of Chelsea's father. Chelsea's younger sister and J.S.'s friend, Carleen, lived in the upper part of the house. *4 With their father out of town, Chelsea and Carleen decided to have a party in their respective portions of the house. J.S. was invited to the upstairs party, and Burke was invited to the downstairs party. The younger and older groups mingled and many there consumed marijuana and alcohol. Burke and J.S. ended up sitting together on a couch late at night.
¶ 4 At some point, Jaime left the party to spend the night elsewhere. A friend told her the next day that Burke and J.S. had been "all over each other." 3 Report of Proceedings (RP) at 173. Jaime approached her sister about this. J.S. told Jaime that Burke had made repeated advances, which she resisted, but that they had indeed had sex. Jaime confronted Burke, who confirmed that he had had sex with J.S. but asserted it was consensual.
¶ 5 The police were notified and as part of their investigation they visited Burke at his home. Burke told the officers that he had consensual sex with a girl he knew only as Jaime's sister, who "was younger than he thought she was." Id. at 212. When asked how old she was, he replied he "did not know, but that he knew she was in high school." Id.
¶ 6 At about this point, Burke's father intervened to ask the police if his son would be charged. When told that it was "very possible," the father advised Burke not to talk to the police until counsel had been consulted. Id. at 213. Burke asked the police if this was possible and was told "yes, [you can] speak to an attorney." Id. at 214. As the police were leaving, Burke said, "he thought that this was a bunch of shit, that girls at Edmonds Woodway [high school] were always trying to get guys in trouble." Id.
¶ 7 The police were asked at trial if Burke ever explained his last comment. An officer testified that "[a]t that time he had already asked pretty much to talk to an attorney, or what I interpreted as, so I did not ask anymore questions. . . . I believed that at that point when Justin asked me if that was possible, that that was kind of his way of stopping the interview." Id. at 214-15.
¶ 8 Burke was charged with RCW 9A.44.079, rape of a child in the third degree. Burke did not dispute the victim's age or deny he had intercourse with her. But under Washington law, if the defendant "reasonably believed the alleged victim to be [16 years old] based upon declarations as to age by the alleged victim," the defendant is not guilty. RCW 9A.44.030(2). Burke asserted this defense, arguing he asked J.S. what year she was in school and how old she was as an icebreaker. He claimed she told him she was 16, about to turn 17.
¶ 9 The State sought to undermine Burke's defense on the theory that if J.S. really told him she was 16, he would have said so either to the police at the first interview or when J.S.'s sister called him the next day furious with him. The State made these arguments in its opening and closing arguments to the jury and stressed Burke's silence in both direct examination of the investigating officers and in cross examination of Burke himself.
¶ 10 For example, in its opening, the State argued:
And for a time the defendant talked to them [police], freely telling them, yeah, I don't remember what her name was, but it was [Jaime's] sister, and yes, we had sex. And then interestingly the, defendant's father cut in, perhaps sensing that things, that the police there and perhaps sensing that it wasn't necessarily okay to have sex with [J.S]. . . . [T]he defendant's father in effect ended the interview by telling the defendant, his own son, that he shouldn't be talking to police. And that pretty much did end the interview. . . .
[The police] were there to gather the defendant's side of the story. That is all he chose to give them and they left.
3 RP at 11. During its case in chief, the State questioned Detective Richardson:
Q. What happened next?
A. Then at that point Justin's father basically came into the room and asked if any charges were going to be filed in the case.
Q. Asking you this question?

*5 A. Yes. And I told him it's very possible that charges would be filed.
. . . .
A. Okay. Father advised Justin not to make any other statements until he spoke to an attorney. And then Justin asked me if that was possible. And I told him that yes, he could speak to an attorney.
Q. After you advised him of that, did he have anymore words for you?
A. Then he made a statement that he thought that this was a bunch of shit, that girls at Edmonds Woodway were always trying to get guys in trouble.
Q. Did he ever explain that to you?
A. At that time he had already asked pretty much to talk to an attorney, or what I interpreted as, so I did not ask anymore questions. That was kind of his 
Q. That was his parting shot?
A. Yeah, his parting statement, I guess. . . .
. . . .
Q. And so the defendant didn't need to be advised of his Constitutional Rights, but you felt as though, at that time, he had said enough about an attorney that you didn't feel you should ask him anymore questions?
A. Yeah, at that point basically it was a voluntary interview and I felt that with his father interjecting into the conversation and saying that Justin, don't make anymore statements until you talk to an attorney, I believed that at that point when Justin asked me if that was possible, that that was kind of his way of stopping the interview. 3 RP at 213-15. During cross examination, the prosecutor asked Burke directly to explain why he failed to say that he thought J.S. was 16 at the time of the police interview. The point was returned to during closing arguments. Burke was found guilty of statutory rape.
¶ 11 Burke moved for a new trial, arguing the prosecutor violated his right to silence by commenting on his father's advice to end the interview and his failure to report to police J.S.'s alleged declaration of her age. The trial court denied his motion. Burke unsuccessfully appealed to the Court of Appeals. We granted review. State v. Burke, 158 Wash.2d 1019, 149 P.3d 378, 2006 Wash. LEXIS 900.

II
¶ 2 Burke's unsuccessful motion for a new trial was premised on the theory that the State violated his right to silence under the Fifth Amendment to the United States Constitution[1] and article I, section 9 of the Washington State Constitution.[2] We traditionally review denials of a motion for a new trial for abuse of discretion. State v. Marks, 71 Wash.2d 295, 302, 427 P.2d 1008 (1967). Among other things, discretion is abused if it is exercised on untenable grounds or for untenable reasons, such as a misunderstanding of the underlying law that causes nonharmless error in the trial. Broom v. State, 150 Wash.2d 689, 706, 81 P.3d 851 (2003).
¶ 13 Burke argues that the prosecutor improperly invited the jury to infer guilt from his exercise of the constitutional right to remain silent.[3] The State argues that Burke did not clearly and unequivocally exercise his right to remain silent, and at most, Burke was only partially silent. The dissent argues we should not review this *6 issue because Burke did not preserve the error by objecting at trial and there is no manifest constitutional error. See RAP 2.5(a)(3). However, neither party addresses manifest constitutional error for several reasons. First, although there was no contemporaneous objection, the issue was raised in the trial court through a postverdict motion for a new trial. The trial court decided the motion on the merits despite the lack of objection. The Court of Appeals also reached the merits of the issue. Therefore, we presume the issue is properly before us and reach the merits of the case.
¶ 14 We will first briefly review when the State may raise, the defendant's silence during a criminal trial. In 1926, the United States Supreme Court held that a defendant who elected to testify could be questioned about his prior silence at a previous trial on the same charges. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). Raffel was indicted for conspiracy to violate the National Prohibition Act. Id. at 495, 46 S.Ct. 566. Raffel did not testify at his first trial, and the jurors were unable to reach a verdict. Id. A prohibition agent testified that during the search of a drinking establishment, Raffel admitted he was the owner of the place. Id. At the second trial, Raffel took the stand and denied admitting ownership. Raffel's silence at his previous trial was raised and he was convicted. Id. The Supreme Court affirmed, noting:
The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness. We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial or to any tribunal other than that in which the defendant preserves it by refusing to testify.
Id. at 499, 46 S.Ct. 566.
¶ 15 In 1964, the Supreme Court ruled that the Fifth Amendment applied to the states via the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). A year later, in Griffin, the Court addressed whether the Fifth Amendment prevented the states from commenting on a defendant's invocation of the right to silence. Griffin, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Griffin was prosecuted for murder in California. Id. Article I, section 13 of the California Constitution provided that "`in any criminal case, whether the defendant testifies or not, his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury.'" Id. at 610, 85 S.Ct. 1229. Griffin failed to testify, his silence was explored by the prosecution, and the court instructed the jury according to the California Constitution. Id. at 610-11, 85 S.Ct. 1229. Griffin was convicted and the death penalty was imposed. Id. at 609, 611, 85 S.Ct. 1229. Justice Douglas spoke for the court:
For comment on the refusal to testify is a remnant of the "inquisitorial system of criminal justice," which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.
Id. at 614, 85 S.Ct. 1229 (citations and footnote omitted) (quoting and citing Murphy v. Waterfront Comm'n, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); People v. Modesto, 62 Cal.2d 436, 452-53, 398 P.2d 753, 42 Cal.Rptr. 417 (1965)).
¶ 16 In 1976, the Supreme Court addressed a similar issue. In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), after having been arrested for selling *7 marijuana and given Miranda[4] warnings, Doyle remained silent. Id. at 611, 96 S.Ct. 2240. Doyle and his codefendant later testified at trial that they had been framed. Id. at 612-13, 96 S.Ct. 2240. For impeachment purposes, the prosecutor cross examined them about the fact they did not tell police they thought they were being framed at the time of arrest. Id. at 613-14, 96 S.Ct. 2240. The Supreme Court reversed the convictions, concluding the government had broken its promises given in the Miranda warnings and violated due process of law. Justice Powell explained:
Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
Id. at 618, 96 S.Ct. 2240.
¶ 17 In 1980, the Supreme Court again examined prosecutorial questioning of a defendant regarding prearrest exercise of silence, but in this case, Jenkins v. Anderson, 447 U.S. 231, 232-33, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), Miranda warnings had not been given. In Jenkins, the accused was charged with murder but convicted of manslaughter. Id. at 232, 234, 100 S.Ct. 2124. Jenkins admitted stabbing the victim but claimed self-defense. Id. at 234, 100 S.Ct. 2124. He did not report the incident to the police until about two weeks after the killing. Id. at 232-33, 100 S.Ct. 2124. At trial, Jenkins testified that the victim attacked him with a knife. Id. at 234, 100 S.Ct. 2124. During cross examination, the prosecutor elicited from Jenkins that he had not reported the stabbing to the police for two weeks. Id. 233, 100 S.Ct. 2124.[5]
¶ 18 The Jenkins Court distinguished Doyle, suggesting it relied on the fact that Miranda warnings were given. In Jenkins, the Court concluded the critical issue is whether the government compels the exercise of a constitutional right. Id. at 236, 100 S.Ct. 2124. The Court held that the "`threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.'" Id. (internal quotation marks omitted) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 32, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). The Court relied upon the Raffel Court's explicit rejection of the possibility of impeachment by prior silence as an impermissible burden' upon the exercise of the Fifth Amendment. Id. at 236-37, 100 S.Ct. 2124 (citing Raffel, 271 U.S. at 499, 46 S.Ct. 566). Finally, the Jenkins Court made it clear that each state jurisdiction remained free to formulate its own evidentiary rules with respect the admissibility of such impeachment evidence, stating:
Our decision today does not force any state court to allow impeachment through the use of prearrest silence. Each jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial.
Id. at 240, 100 S.Ct. 2124.
¶ 19 Several decisions issued by this court also bear on our analysis. In 1996, this court issued two companion decisions involving prearrest statements. Easter, 130 Wash.2d 228, 922 P.2d 1285; State v. Lewis, 130 Wash.2d 700, 927 P.2d 235 (1996). Both involved prearrest silence. In Easter, the defendant maintained his silence through trial. In Lewis, the defendant testified. In Easter, following a motor vehicle collision in which four persons were injured, Easter was charged with four counts of vehicular assault. Easter, 130 Wash.2d at 231, 922 P.2d 1285. Easter did not speak to officers at the scene nor did he testify at trial. Id. at 231-32, 922 P.2d 1285. The investigating officer took the witness stand and described Easter's prearrest silence as that of a "smart drunk." Id. at 233, 922 P.2d 1285. Painting Easter as a *8 smart drunk, who knew better than to cooperate with the police, became a theme of the prosecutor. Id. at 233-34, 922 P.2d 1285. We noted numerous authorities holding that prearrest silence is not admissible because of its low probative value and high potential for undue prejudice. Id. at 235 n. 5, 922 P.2d 1285. But we concluded that "[t]he use of pre-arrest silence as substantive evidence of guilt implicates the Fifth Amendment and is not merely an evidentiary issue." Id. at 235, 922 P.2d 1285. We reversed Easter's conviction.
¶ 20 We affirmed the conviction in Lewis. There, the defendant argued his prearrest silence was used by the prosecution as substantive evidence of guilt. Lewis, 130 Wash.2d 700, 927 P.2d 235. Lewis was charged with rape. Id. at 701, 927 P.2d 235. He was alleged to have demanded sex from women to whom he supplied drugs. Id. at 702, 927 P.2d 235. The arresting officer testified on direct that he had contacted Lewis by phone and Lewis admitted that the women had been in his apartment. Id. at 702-03, 927 P.2d 235. The officer also testified that Lewis denied that anything had happened and that "`my only other conversation was that if he was innocent he should just come in and talk to me about it'" Id. at 703, 927 P.2d 235. We reaffirmed the distinction noted in Easter between the proper use of prearrest silence to impeach the defendant's testimony and the improper use of silence as substantive evidence of the defendant's guilt.
In Easter, we resolved this issue. We held that a defendant's pre-arrest silence, in answer to the inquiries of a police officer, may not be used by the State in its case in chief as substantive evidence of defendant's guilt. . . .
Since we have concluded that pre-arrest silence is not admissible as substantive evidence of an accused's guilt, the question becomes whether Lewis's silence was used as evidence of his guilt. A police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions.
Id. at 705, 927 P.2d 235. The majority in Lewis concluded the officer's testimony was not used as substantive evidence of guilt.[6]Id. at 706, 927 P.2d 235. We rejected the holding by the Court of Appeals that a defendant's testimony always transforms commentary on the defendant's prearrest silence into impeachment. Id. at 706 n. 2, 927 P.2d 235. We observed:
The Court of Appeals found that the evidence of silence was admissible because Lewis later testified; hence, the prior silence would have been admissible as impeachment evidence. We disagree. If evidence of silence comes in to show guilt in the State's case in chief, then a defendant may be forced to testify to rebut such an inference.
Id.
¶ 21 Finally, when the defendant's silence is raised, we must consider "whether the prosecutor manifestly intended the remarks to be a comment on that right." State v. Crane, 116 Wash.2d 315, 331, 804 P.2d 10 (1991). The Crane court then noted that a prosecutor's statement will not be considered a comment on a constitutional right to remain silent if "standing alone, [it] was `so subtle and so brief that [it] did not "naturally and necessarily" emphasize defendant's testimonial silence.'" Id. (second alteration in original) (quoting State v. Crawford, 21 Wash.App. 146, 152, 584 P.2d 442 (1978)). A remark that does not amount to a comment is considered a "mere reference" to silence and is not reversible error absent a showing of prejudice. Lewis, 130 Wash.2d at 706-07, 927 P.2d 235. Thus, focusing largely on the purpose of the remarks, this court distinguishes between "comments" and "mere references" to an accused's prearrest right to *9 silence.[7]
¶ 22 In summary, often distinguished as prearrest silence and postarrest silence, the Supreme Court has established two basic rules: one based upon the Fifth Amendment right to remain silent before Miranda warnings are given and one based upon due process under the Fourteenth Amendment when the State issues Miranda warnings promising defendants that their silence will not be used against them. The Fifth Amendment prohibits impeachment based upon the exercise of silence where the accused does not waive the right and does not testify at trial. Griffin, 380 U.S. at 615, 85 S.Ct. 1229. Due process under the Fourteenth Amendment also prohibits impeachment based on silence after Miranda warnings are given, even if the accused testifies at trial. Doyle, 426 U.S. at 619, 96 S.Ct. 2240. However, no constitutional protection is violated if a defendant testifies at trial and is impeached for remaining silent before arrest and before the State's issuance of Miranda warnings. Jenkins, 447 U.S. at 240, 100 S.Ct. 2124. Finally, states are permitted to formulate their own evidentiary rules, so long as they do not fall below minimum constitutional standards. Id.
¶ 23 We have concluded that even when the defendant testifies at trial, use of prearrest silence is limited to impeachment and may not be used as substantive evidence of guilt. Lewis, 130 Wash.2d at 705-06, 927 P.2d 235 (citing Easter, 130 Wash.2d 228, 922 P.2d 1285). In circumstances where silence is protected, a mere reference to the defendant's silence by the government is not necessarily a violation of this principle; however, when the State invites the jury to infer guilt from the invocation of the right of silence, the Fifth Amendment and article I, section 9 of the Washington Constitution are violated. Id. at 706-07, 927 P.2d 235; see also Crane, 116 Wash.2d at 331, 804 P.2d 10. With these principles in mind, we turn to the arguments of the parties.
¶ 24 The case before us involves art interview with law enforcement occurring before Miranda warnings were given. Because Burke testified at trial, his prearrest silence could be used to impeach him without violating his Fifth Amendment or article I, section 9 right to remain silent. However, prearrest silence could not be used against the defendant as substantive evidence of guilt. "The cases that have permitted testimony about the defendant's silence have done so only for the limited purpose of impeachment after the defendant has taken the stand, and not as substantive evidence of guilt when the defendant has not testified." Easter, 130 Wash.2d at 237, 922 P.2d 1285. As we observed in Lewis, "[i]f evidence of silence comes in to show guilt in the State's case in chief, then a defendant may be forced to testify to rebut such an inference." Id. at 706 n. 2, 927 P.2d 235.[8]
¶ 25 The crux of the State's argument is that when given the opportunity to tell his side Of the story during the prearrest interview with Detective Richardson, Burke did not mention that J.S. told him she was 16.
*10 The State argues that what Burke did say and what he did not say by remaining silent during the interview could be used to imply his guilt. A proper analysis requires careful attention to what was said, what was not said, the invocation of silence, proper impeachment, and the use of silence itself to imply guilt.
¶ 26 As we have already stated, because Burke's interview with Detective Richardson was pre-Miranda warnings and because Burke testified at trial, neither his Fourteenth Amendment nor his Fifth Amendment rights to silence are violated if the State uses silence to impeach him. However, our analysis does not end there. This court has joined other courts in being skeptical of the probative value of impeachment based on silence. Easter, 130 Wash.2d at 235 n. 5, 922 P.2d 1285. As explained by the New York Court of Appeals:
Silence in these circumstances is ambiguous because an innocent person may have many reasons for not speaking. Among those identified are a person's "awareness that he is under no obligation to speak or the natural caution that arises from his knowledge that anything he says might be later used against him at trial," a belief that efforts at exoneration would be futile under the circumstances or because of explicit instructions not to speak from an attorney. Moreover, there are' individuals who mistrust law enforcement officials and refuse to speak to them not because they are guilty of some crime, but rather because "they are simply fearful of coming into contact with those whom they regard as antagonists." In most cases it is impossible to conclude that a failure to speak is more consistent with guilt than with innocence.
People v. De George, 73 N.Y.2d 614, 618-19, 541 N.E.2d 11, 543 N.Y.S.2d 11 (1989) (citations omitted); see also People v. Cetlinski 435 Mich. 742, 760, 460 N.W.2d 534 (1990) (noting that a failure to come forward is ambiguous because a defendant is under no duty to do so); Doyle, 426 U.S. at 617 n. 8, 96 S.Ct. 2240 (noting that even aside from Miranda warnings, silence may have several explanations consistent with innocence and is of dubious probative value).
¶ 27 This court has been very careful to limit the use of silence to impeachment only. Impeachment is evidence, usually prior inconsistent statements, offered solely to show the witness is not truthful. State v. Thorne, 43 Wash.2d 47, 53, 260 P.2d 331 (1953). Such evidence may not be used to argue that the witness is guilty or even that the facts contained in the prior statement are substantively true. Id. Previously limited to opposing witnesses, the current rule is that even a party's own witness may be impeached with prior inconsistent statements. ER 607. An accused's failure to disclose every detail of an event when first contacted by law enforcement officials is not per se an inconsistency.
¶ 28 In addition to the reasons outlined by the New York court above for being cautious about the probative value of silence for impeachment, at the time of the interview Burke may not have appreciated the significance of J.S.'s age. He may not have known that if she was 16 or 17, rather than 15, it was a defense to the crime. Based upon Burke's testimony at trial as developed by cross-examination, both statements Burke did make as well as his omissions may have been admissible as impeachment.
¶ 29 The State also argues that the right of silence is not implicated because Burke never invoked his right to counsel during the police interview. The Court of Appeals agreed because no such right had accrued at the time of the police interview. State v. Burke, noted at 158 Wash.App. 1055, 149 P.3d 378, 2006 Wash.App. LEXIS 287, at *7 (unpublished). Further, the Court of Appeals observed correctly that Burke did not assert his right to remain silent but instead voluntarily continued to speak, making derisive comments about girls attending J.S.'s school. The invocation of the Sixth Amendment right to counsel requires an unambiguous request for counsel. Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). A suspect must clearly articulate his desire to have counsel present such that a reasonable police officer under the circumstances would understand the *11 statement to be a request for an attorney. Id. Officers are not required to cease questioning in the face of an equivocal or ambiguous request for counsel. Id. at 459-60, 114 S.Ct. 2350. Had the police continued to question and had Burke continued to talk, and the issue before us was the admissibility of those subsequent statements, we may agree with the State.[9]
¶ 30 However, the issue before us is not the admissibility of Burke's subsequent statements, but whether the State improperly commented on what Burke did not say so as to burden his right of silence. Unlike the Sixth Amendment right of counsel, the Fifth Amendment right of silence requires no magic words.[10]Quinn v. United States, 349 U.S. 155, 164, 75 S.Ct. 668, 99 L.Ed. 964 (1955) (privilege asserted by conduct "sufficiently definite to apprise" the listener that the claim is being made). "No special set of words is necessary to invoke the right," and "silence in the face of police questioning is quite expressive as to the person's intent to invoke the right." Easter, 130 Wash.2d at 239, 922 P.2d 1285 (citing Quinn, 349 U.S. at 162, 75 S.Ct. 668). Importantly, the investigative officer accepted Burke's question if it was possible to speak with an attorney as an assertion of his right to silence, not just of his right to counsel. At trial, the State offered as substantive evidence the investigating officers testimony, "[a]t that time he had already asked pretty much to talk to an attorney, or what I interpreted as, so I did not ask any more questions. . . . I believed that at that point when Justin asked me if that was possible, that that was kind of his way of stopping the interview." 3 RP at 214-15.
¶ 31 The State stressed that when offered the opportunity to speak to an attorney, Burke terminated the interview. The State invited the jury to consider the invocation of the right to counsel to be evidence of guilt. This was improper. It would be incongruous for the State to tell the jury that Burke exercised his right to silence, to suggest he did so because of guilt, and then for the State to argue that the inference from guilt by silence was proper because Burke did not invoke his right to remain silent unequivocally. Under these facts, we decline the State's invitation to hold that Burke never invoked his right to silence. Courts are appropriately reluctant to penalize anyone for the exercise of any constitutional right.
¶ 32 We agree with the dissent that this court distinguishes between comments on silence and mere reference to silence. But this case does not involve a mere reference to silence. The prosecution intentionally invited the jury to infer guilt from Burke's termination of his interview with Detective Richardson. The prosecutor, in his opening statement, attempted to penalize Burke for terminating the interview and suggested Burke did so because he had done something wrong. The prosecutor described Burke's father as "sensing that it wasn't necessarily okay to have sex with [J.S.]," then advising his son to end the interview. 3 RP at 11. In the same breath, the State noted "that [the father's comments] pretty much did end the interview." Id. at 11. The inference the jury is invited to make is that Burke ended the interview because he adopted his father's advice, based on the idea that the guilty should keep quiet and talk to a lawyer. *12 ¶ 33 The State imputed to Burke the reasons it believed his father gave for ending the interview: a "sense" that Burke's sexual encounter with J.S. was illegal. An analysis of imputation examines the prosecutor's intent and whether the jury would "naturally and necessarily" take the comments as referring to the defendant's silence. See United States ex rel. Smith v. Rowe, 618 F.2d 1204, 1209 (7th Cir.1980), vacated and remanded on other grounds sub nom, Franzen v. Smith, 449 U.S. 810, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980). The State thus advanced the link between guilt and the termination of the interview. The implication is that suspects who invoke their right to silence do so because they know they have done something wrong. We conclude the State violated Burke's right to silence.
¶ 34 The question remains whether this error was harmless. A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. Easter, 130 Wash.2d at 242, 922 P.2d 1285. The trial boiled down to whether the jury believed or disbelieved Burke's story that the victim told him she was 16. Repeated references to Burke's silence had the effect of undermining his credibility as a witness, as well as improperly presenting substantive evidence of guilt for the jury's consideration. We hold the error was not harmless.[11]

III
¶ 35 We conclude that the State impermissibly commented upon the defendant's assertion of the right to remain silent so as to invite the jury to infer guilt from the exercise of a constitutionally protected right. We find the trial court exercised its discretion on untenable grounds and reverse, without prejudice.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, RICHARD B. SANDERS, JJ.
MADSEN, J. (dissenting).
¶ 36 The majority correctly acknowledges Justin Burke's statements and omissions may be used against him, yet it mistakes the State's proper use of his statements and omissions as impermissible comments on his "silence." Although I agree it was improper for the State to draw attention to Burke's apparent desire to consult an attorney before answering further questions, I do not believe the error is of constitutional magnitude that warrants review for the first time on appeal, let alone reversal of his conviction. The improper testimony was, at best, an indirect reference to Burke's exercise of his right to silence, and its impact was negligible when viewed in the context of the record as a whole, including the State's proper use of his statements and omissions.
¶ 37 Because Burke fails to demonstrate the challenged testimony amounts to manifest constitutional error, this court need not even review it for the first time on appeal.[1] RAP 2.5(a)(3); State v. Kirkman, 159 Wash.2d 918, 926, 155 P.3d 125 (2007). What is particularly troubling here is that Burke did not object at trial or move to strike on Fifth Amendment grounds any of the statements at issue. Although Burke raised the issue in a motion for a new trial, this was too late to afford the trial court an adequate opportunity to prevent or remedy the error. Counsel may pot "`remain silent at trial as to claimed errors and later, if the verdict is adverse, urge trial objections for the first time in a motion for new trial or appeal.'" State v. Kendrick, 47 Wash.App. 620, 636, 736 P.2d 1079 (1987) (quoting State v. Bebb, 44 Wash.App. 803, "806, 723 P.2d 512 (1986)).
¶ 38 In the interest of judicial economy, ordinarily this court will not review an error raised for the first time on review. Kirkman *13 159 Wash.2d at 926, 155 P.3d 125. An exception exists for a "manifest error affecting a constitutional right." RAP 2.5(a)(3); Kirkman, 159 Wash.2d at 926, 155 P.3d 125. However, the exception is "a narrow one." Kirkman, 159 Wash.2d at 934, 155 P.3d 125 (quoting State v. Scott, 110 Wash.2d 682, 687, 757 P.2d 492 (1988)). A manifest error is one which is "unmistakable, evident or indisputable." State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992). In order to establish manifest constitutional error, a defendant must demonstrate actual prejudice. This deters trial counsel from deliberately not raising issues that are unlikely to impact the jury verdict but may provide a basis for a successful appeal. Id. at 343, 835 P.2d 251; see also Kirkman, 159 Wash.2d at 934, 155 P.3d 125 (observing that a failure to object to improper testimony is often tactical). Thus, unless the claimed error had "practical and identifiable consequences in the trial" it is not manifest. Kirkman, 159 Wash.2d at 935, 155 P.3d 125 (quoting State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999) (quoting Lynn, 67 Wash.App. at 345, 835 P.2d 251)). In determining whether a claimed error is manifest, a reviewing court should view the error in the context of the record as a whole, rather than in isolation. Scott, 110 Wash.2d at 688, 757 P.2d 492.
¶ 39 The State should not draw attention to a defendant's exercise of the constitutional right to silence.[2] Here, the State elicited testimony that Burke's father intervened to end the interview  advising his son not to answer any more questions before speaking with an attorney  and that Burke apparently followed the advice. This was improper. However, not all improper references to a defendant's request for a lawyer, or choice to discontinue talking with the police, are errors of constitutional magnitude.
¶ 40 In State v. Lewis, 130 Wash.2d 700, 706-07, 927 P.2d 235 (1996), this court distinguished between "comments" and "references" on silence. Both are improper, but only the former rise to the level of constitutional error. Improper references to silence are not reversible error absent prejudice and are not reviewable for the first time on appeal. State v. Romero, 113 Wash.App. 779, 790-91, 54 P.3d 1255 (2002). A "comment" occurs when the State uses a defendant's silence as substantive evidence of guilt or suggests the silence was an admission of guilt. State v. Gregory, 158 Wash.2d 759, 838, 147 P.3d 1201 (2006) (citing Lewis, 130 Wash.2d at 707, 927 P.2d 235). A comment is more likely to be found when the State refers directly to the defendant's exercise of the right to silence. See, e.g., Romero, 113 Wash.App. at 785, 54 P.3d 1255 ("`I read him his Miranda[3] warnings, which he chose not to waive, would not talk to me.'"); State v. Curtis, 110 Wash.App. 6, 37 P.3d 1274 (2002) (officer testified he read defendant his Miranda rights and defendant refused to talk, stating he wanted an attorney). By contrast, indirect or fleeting references to a defendant's apparent exercise of the right to silence do not rise to the level of constitutional error.
¶ 41 For example, in State v. Sweet, 138 Wash.2d 466, 480, 980 P.2d 1223 (1999), a detective testified that when he asked the defendant to provide a written statement, the defendant "`said that he would do that after he had discussed the matter with his attorney.' "This court characterized the testimony as "at best `a mere reference to silence which is not a `comment' on the silence [and] is not reversible error absent a showing of prejudice.'" Id. at 481, 980 P.2d 1223 (alteration in original) (quoting Lewis, 130 Wash.2d at 706-07, 927 P.2d 235). See also Lewis, 130 Wash.2d at 706, 927 P.2d 235 (officer testified he told the defendant if he *14 was innocent he should come and talk about it).
¶ 42 Here, the improper references were, at best, indirect comments on Burke's exercise of the right to silence. The officer's testimony made clear that it was Burke's father, not Burke, who abruptly brought the interview to a close, advising his son to consult an attorney before proceeding. A parent cannot invoke a constitutional right on behalf of an adult child. Further, testimony that Burke replied, "if that was possible [to end the interview]" showed Burke inquiring about, not exercising, his right to silence. 3 Verbatim Report of Proceedings (VRP) at 214. Indeed, after receiving assurance that he had the right to consult with an attorney, Burke did not remain silent but instead made a profane remark, exclaiming, "Edmonds Woodway High School girls were always trying to get people into trouble." Id. The officer testified he did not ask Burke to elaborate because he understood Burke was choosing to end the interview at that point. This testimony is best characterized as an indirect reference to Burke's exercise of the right to silence.
¶ 43 The majority apparently infers the challenged testimony was an impermissible use of silence as substantive evidence of guilt because it occurred in the State's case-in-chief, rather than during rebuttal. However, the majority fails to recognize the State had a permissible purpose in eliciting testimony that Burke chose to end the interview. Testimony on a defendant's decision to end an interview with the police is not necessarily an improper reference to the exercise of the right to silence. When a defendant makes an admissible statement, the witness who relates that statement may indicate the defendant chose to stop. United States v. Williams, 181 U.S.App. D.C. 188, 556 F.2d 65 (1977). Otherwise, the jury may infer the police cut the interview short before the defendant had a full opportunity to give his account. This is particularly true where, as here, the defendant has essentially made a full confession to the police before electing not to speak further. Thus, the State was entitled to show the police did not unfairly cut off Burke's opportunity to elaborate on his admissions that he had sex with someone he knew was a high school student, even though he did not know her age.
¶ 44 Although it was not necessarily improper for the State to elicit testimony that Burke chose to stop talking to the police, arguably it was improper for the State to elicit testimony that Burke asked "if that was possible," referring to his father's advice that he consult with an attorney before answering more questions. Testimony about a defendant's desire or request for a lawyer is impermissible. Id. at 67. The defendant's choice to give a partial statement does not justify the State drawing attention to the defendant's subsequent decision to seek assistance of counsel before proceeding. Thus, a prosecutor should refrain from eliciting testimony that a defendant asked whether he could consult with an attorney in order to avoid unfair inferences or prejudice.
¶ 45 This is a situation, however, where a motion in limine, or a timely objection or motion to strike, could have easily prevented or remedied the error. See State v. Bullock, 71 Wash.2d 886, 893, 431 P.2d 195 (1967) (refusing to review whether State impermissibly commented on defendant's postarrest silence for failure to lodge a timely objection at trial); State v. Hamilton, 47 Wash.App. 15, 18-19, 733 P.2d 580 (1987) (defendant waived objection to prosecutor's improper remarks where a sustained objection and curative instruction could have cured unfair prejudice). Because the State had a permissible purpose in eliciting that Burke, not the police, chose to end the interview, the improper testimony was not egregious and should be considered waived. "Appellate courts will not approve a party's failure to object at trial that could identify error which the trial court might correct (through striking the testimony and/or curative jury instruction)." Kirkman, 159 Wash.2d at 935, 155 P.3d 125; see State v. Belgarde, 110 Wash.2d 504, 507, 755 P.2d 174 (1988) (failure to object excusable only when no curative instruction would remedy the error).
¶ 46 In Kirkman, 159 Wash.2d at 930, 155 P.3d 125, we held improper opinion testimony that allegedly violated the defendant's Sixth Amendment right to a jury trial does *15 not rise to the level of manifest constitutional error unless the witness expressly vouches for a witness's credibility. Indirect testimony on the witness's credibility, although arguably improper, is not "manifest error" and does not warrant review for the first time on appeal. See also State v. King, 131 Wash. App. 789, 130 P.3d 376 (2006) (witness's indirect references to a victim's credibility not manifest constitutional error), review denied, 160 Wash.2d 1019, 163 P.3d 793 (2007); State v. Madison, 53 Wash.App. 754, 770 P.2d 662 (1989) (improper references to a victim's credibility is not reviewable as manifest constitutional error unless they amount to express, not indirect, opinion testimony), review denied, 113 Wash.2d 1002, 777 P.2d 1050 (1989). Agreeing with the Court of Appeals, Division One's analysis of the issue, we stated, "`Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." Kirkman, 159 Wash.2d at 936, 155 P.3d 125. We reasoned that allowing review of only explicit opinion testimony is more consistent with our holding that the manifest error exception is narrow.
¶ 47 We should adopt a similar approach in deciding whether alleged comments on prearrest silence are reviewable for the first time on appeal. Kirkman, 159 Wash.2d 918, 155 P.3d 125. When the State has a legitimate purpose in eliciting testimony concerning a defendant's choice to end a police interview, a reviewing court should be particularly reluctant to characterize ambiguous references to the defendant's silence as manifest constitutional error. Compare State v. Holmes, 122 Wash.App. 438, 93 P.3d 212 (2004) (State had no legitimate reason to elicit testimony that defendant failed to proclaim his innocence upon arrest).
¶ 48 Even assuming the testimony was improper, Burke has failed to show he was prejudiced by the error. Williams is instructive. In Williams, the defendant testified he fled from plainclothes detectives at the scene of a bank robbery because he did not know they were police officers. The State impeached his testimony by showing he gave a different version of events to the arresting officer. The arresting officer testified, "`He then stated that he wanted to talk to a lawyer before he answered any more questions, at which time I concluded my interview with him.'" Williams, 556 F.2d at 66. The appellate court affirmed his conviction while acknowledging the reference to an attorney was improper. Viewing the record as a whole, the court stated, "What was damaging was not any testimony of defendant's silence, but the testimony of what defendant said before he decided to say no more." Id.
¶ 49 So too with Burke. Burke freely admitted he had sexual intercourse with a girl he knew to be in high school, even though he did not know how old she was. Although Burke later testified she told him she was 16, he gave inconsistent and contradictory explanations that simply did not add up. It was Burke's own words and omissions that proved so damaging at trial, not the State's indirect comment on his apparent desire to consult an attorney. The majority fails to recognize this because it does not acknowledge the devastating impact the State's proper use of Burke's statements and omissions had on his credibility.
¶ 50 Not all incriminating inferences drawn from a defendant's nonstatements amount to the impermissible use of silence as substantive evidence of guilt. For example, in Gregory, 158 Wash.2d at 838-39, 147 P.3d 1201, a detective testified that he left a business card at the defendant's home, with a message to contact him, but the defendant did not do so for three days. When the defendant finally spoke with police, he gave an alibi as to his whereabouts at the time of the crime. In closing argument, the prosecutor asked the jury to infer the defendant's delay in contacting the police gave him ample time to fabricate his alibi. This court held the testimony and closing argument did not constitute an impermissible comment on the defendant's constitutional right to silence. Id. at 840, 147 P.3d 1201. This court stated the prosecutor did not unfairly use the defendant's delay in contacting police to suggest he was avoiding the police because he was guilty. Rather, the prosecutor used it for the permissible purpose of impeaching his alibi defense by suggesting the delay gave him ample time to *16 make his story consistent with that of other witnesses.
¶ 51 Similarly, here, the prosecutor did not unfairly use Burke's choice to end the police interview to suggest his silence was an admission of guilt. Rather, the prosecutor used it for the permissible purpose of showing that Burke had been free to tell the officer's whatever he wanted, yet elected not to tell them what he later recognized was the "crux" of the matter, that J.S. said she was 16. 4 VRP at 62. Instead, he told them he had sex with her, he knew she was a high school student, and he did not learn how old she was until later.
¶ 52 When a defendant does not remain silent and instead speaks with the police, the State may comment on what he does not say. State v. Clark, 143 Wash.2d 731, 765, 24 P.3d 1006 (citing State v. Young, 89 Wash.2d 613, 621, 574 P.2d 1171 (1978)), cert, denied, 534 U.S. 1000, 122 S.Ct. 475, 151 L.Ed.2d 389 (2001). Such omissions do not amount to constitutionally protected "silence," and the State may use them as substantive evidence of guilt. State v. McFarland, 73 Wash.App. 57, 867 P.2d 660 (1994) (defendant's failure to mention he had contact with shotgun until after he was confronted with incriminating evidence held admissible when he had freely spoken with the police about the alleged crime); State v. Bradfield, 29 Wash.App. 679, 685, 630 P.2d 494 (nonstatements of defendant admissible when defendant voluntarily speaks to the police), review denied, 96 Wash.2d 1018 (1981). "[T]he State may question a defendant's failure to incorporate the events related at trial into the statement given police or it may challenge inconsistent assertions." Belgarde, 110 Wash.2d at 511, 755 P.2d 174 (citing Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); State v. Seeley, 43 Wash.App. 711, 714, 719 P.2d 168 (1986)). Such inconsistencies are not "insolubly ambiguous" but rather "`strongly suggests a fabricated defense and the silence properly impeaches the later defense.' "Belgarde, 110 Wash.2d at 511-12, 755 P.2d 174 (quoting State v. Cosden, 18 Wash.App. 213, 221, 568 P.2d 802 (1977)). "Each of two inconsistent descriptions of events may be said to involve `silence' insofar as it omits facts included in the other version. But Doyle [v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] does not require any such formalistic understanding of `silence. . . .'" Anderson, 447 U.S. at 409, 100 S.Ct. 2180.
¶ 53 This court's decision in Young, 89 Wash.2d 613, 574 P.2d 1171, is instructive here. In that case the defendant was informed he was under arrest and was read his Miranda rights before he was transported to the federal courthouse in Yakima. The defendant stated he understood his rights. During the two hour ride to Yakima, although the defendant was silent much of the time, he did make several damaging statements. At trial the defendant objected to use of the statements, claiming that such use violated his right to remain silent. Id. at 619, 574 P.2d 1171. This court disagreed. We observed, that by voluntarily making statements, not in response to interrogation, the defendant had chosen not to remain silent and that the prosecutor was entitled to argue the defendant's failure to disclaim responsibility based on his silence on the point. Id. at 621, 574 P.2d 1171.
¶ 54 Similarly, in Hamilton, 47 Wash.App. 15, 733 P.2d 580, the Court of Appeals rejected a defendant's claim that the State violated his constitutional right to silence by commenting on his failure to provide exculpatory information during a prearrest telephone conversation with police. The defendant broke into his ex-girlfriend's home, shot a man through a closed bathroom door, and then fled. He later called the residence and spoke with a police officer for about 15 minutes. Id. at 16, 733 P.2d 580. At trial, the defendant testified he believed the victim was an intruding rapist. On cross-examination, the prosecutor asked why he had not mentioned this information to the police officer during their telephone conversation. Id. at 19, 733 P.2d 580. The defendant argued that in light of Lewis, the Doyle rule applies even in the prearrest context, barring the police from using silence either as substantive evidence or as impeachment evidence. The Court of Appeals rejected the argument. "`[T]he Fifth Amendment is not violated by the use of prearrest silence to impeach a *17 criminal defendant's credibility.'" Hamilton, 47 Wash.App. at 20, 733 P.2d 580 (quoting Jenkins v. Anderson, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980)).
¶ 55 As the majority states, this court has joined other courts "in being skeptical of the probative value of impeachment based on silence." Majority at 10 (citing Lewis, 130 Wash.2d at 705 n. 5, 927 P.2d 235). Because a defendant may have legitimate reasons to remain silent, it may be "`impossible to conclude that a failure to speak is more consistent with guilt than with innocence,'" rendering such evidence irrelevant and, thus, inadmissible under the rules of evidence. Majority at 10 (quoting People v. De George, 73 N.Y.2d 614, 618-19, 541 N.E.2d 11, 543 N.Y.S.2d 11 (1989)). However, the probative value of silence depends on the particular facts and circumstances. Necessarily each case must be decided on its own facts. When a defendant elects to speak rather than remain silent, the things he "does not say" gain probative value viewed in the context of his affirmative statements, whether made to police investigators or at trial.
¶ 56 Burke's failure to relate that J.S. misled him about her age was not constitutionally protected "silence;" it was an omission that has substantial probative value viewed in the context of his willingness to admit having sex with her, his admission that he did not know her age at the time, and his outburst of indignation upon learning he would be held criminally liable for his conduct ("Edmonds Woodway girls are always trying to get people into trouble"). Burke's testimony that he carefully inquired about J.S.'s age before having sex with her to ensure she was old enough to consent increased the probative value of his omission.
¶ 57 Under the facts presented, it is not impossible to conclude Burke's "silence" was more consistent with guilt than with innocence. Rather, his omissions raise a reasonable inference he was untruthful when he testified that J.S. said she was above the age of consent. 4 VRP at 63. The simple fact is that Burke was not "silent," but chose to speak. Once he freely spoke to police, the State was free to comment on what he did and did not say.
¶ 58 The majority states, "[a]n accused's failure to disclose every detail of an event when first contacted by law enforcement is not per se an inconsistency." Majority at 10. I agree. However, in this case, Burke told officers he did not know how old J.S. was when he had sex with her. At trial, he said he deliberately asked her age because he knew it was wrong to have sex with a 15 year old. The majority notes, "Burke may not have appreciated the significance of J.S.'s age. He may not have known that if she was 16 or 17, rather than 15, it was a defense to the crime." Id. at 10. Burke was entitled to raise these arguments before the jury, which he did. The State was entitled to argue Burke would have mentioned J.S.'s alleged misrepresentation to the police, if it were true, rather than saying he didn't know her age. It was for the jury to decide whether Burke's testimony was true.
¶ 59 The State presented other powerful impeachment evidence that undermined Burke's credibility. The police were not the only ones to whom Burke omitted mention of J.S.'s alleged misrepresentation. He also failed to mention it to J.S.'s older sister, Jaime, or to his friend, Chelsea Pierson. Burke and Jaime had been good friends, who "hung out all the time." 3 VRP at 155. Jaime testified that when she confronted Burke and got him to admit he had sex with J.S., she became furious with him, repeatedly shouting, "I can't believe you did this, she is only 15." Id. at 154-55. She also threatened to "send him to jail." Id. at 132. Yet Burke did not tell her he believed J.S. was older than 15. The State argued that a reasonable person would have responded by saying he had been misled into believing J.S. was 16, if that were in fact true. This was entirely appropriate. See ER 801(d)(2)(ii); State v. Holland, 30 Wash.App. 366, 384, 635 P.2d 142 (1981) (defendant's failure to claim a shooting was accidental at the time he admitted involvement to the victim's family was not an impermissible comment on silence), aff'd on other grounds, 98 Wash.2d 507, 656 P.2d 1056 (1983).
*18 ¶ 60 Chelsea Pierson is Burke's friend. She testified that she spoke with him many times "about this incident," including "about every time we hung out." 3 VRP at 193. When the prosecutor asked her to relate what Burke said, she replied, "that he did have sex with her and that he didn't know how young she was and that [he] thought she wanted it too, basically." Id. She said he related many specific details about the encounter, including that J.S. "even helped him" take off her pants, that "he used a condom." Id. at 195. However, he did not tell her that J.S. said she was 16 or 17.
¶ 61 At trial, Burke testified that before he had sex with J.S., he asked her how old she was, and she said she was nearly 17 years old and about to begin her senior year in high school. Burke also testified he first learned she was 15 years old when Jaime told him so during their telephone conversation.
¶ 62 On cross-examination, the prosecutor elicited that Burke asked J.S. her age because he understood the age of consent was 16, and he wanted to be sure she was old enough to have sex with him. Burke had no explanation for why he did not previously mention, either to Jaime, or to Chelsea, or to the police, that J.S. said she was nearly 17. Yet he agreed this was "the most important information" concerning the propriety of his sexual relations with her. 4 VRP at 63. He acknowledged it was something one would "naturally want to tell the police." Id. at 61.
¶ 63 As the prosecutor stated in closing argument, Burke's defense was irreconcilably inconsistent with his own admissions. He attempted to explain his failure to tell police about J.S.'s alleged misrepresentation by stating he did not recognize the importance of that fact. Yet he testified he asked J.S. about her age to assure himself she was old enough to consent to sex.
¶ 64 The prosecutor suggested that, in view of these facts, it was highly unlikely Burke was truthful since he would have told the officers at the time he freely admitted having sex with her, instead of simply protesting that girls at her high school were "always trying to get people into trouble." This was a legitimate use of Burke's omissions, not an impermissible use of his silence to infer guilt.

Conclusion
¶ 65 The State improperly elicited testimony that Burke asked if he could consult with an attorney before answering any more questions. However, the error was, at most, an indirect reference to Burke's exercise of his right to silence and does not warrant review for the first time on appeal. Moreover, when viewed in context, the improper testimony was harmless. The majority incorrectly assesses its prejudicial impact by mischaracterizing the State's legitimate use of Burke's admissions and omissions as improper commentary on his silence. I would affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., JAMES M. JOHNSON, BOBBE J. BRIDGE, JJ., Pro Tem.
NOTES
[1] The Fifth Amendment states, in part, no person "shall . . . be compelled in any criminal case to be a witness against himself." This provision applies to states through the Fourteenth Amendment. Mulloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
[2] Article I, section 9 states in relevant part: "No person shall be compelled in any criminal case to give evidence against himself."
[3] Both parties make considerable arguments based upon the Sixth Amendment right to counsel. In both briefing and oral argument, Burke fails to distinguish between the right to silence and the right to counsel. Although the right to counsel implicates the right to silence, the two are separate. See Connecticut v. Barrett, 479 U.S. 523, 528-29, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987).
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Jenkins did testify that he had reported the episode to his probation officer two days after the stabbing. Jenkins, 447 U.S. at 233, 100 S.Ct 2124.
[6] In Lewis, the majority found that the officer's testimony was not even referring to the defendant's silence, let alone an implication that such silence was the result of the defendant's guilt. Lewis, 130 Wash.2d at 705-06, 927 P.2d 235. Justices Madsen and Alexander would have found that the officer was testifying about the defendant's prearrest silence and implying silence reflected guilt, but that the commentary was harmless error. Id. at 710-11, 927 P.2d 235.
[7] The following are some examples of what courts have and have not considered "comments" on the right to silence. In Lewis, an officer testified that he told the defendant "that if he was innocent he should just come in and talk to me about it." Lewis, 130 Wash.2d at 703, 927 P.2d 235. This court held that the officer's statement did not constitute an improper comment and instead was mere reference. Id. at 705-06, 927 P.2d 235. In contrast, the following have been found to be impermissible comments on the right to remain silent: (1) police officer characterized the defendant as evasive and a "smart drunk" after the defendant refused to answer questions at an accident scene, Easter, 130 Wash.2d at 233, 922 P.2d 1285; (2) police officer testified, "`I read him his Miranda warnings, which he chose not to waive, would not talk to me,'" State v. Romero, 113 Wash.App. 779, 793, 54 P.3d 1255 (2002); (3) prosecutor asked the officer whether the defendant said anything in response to receiving Miranda warnings, and there was no purpose other than to inform the jury that the defendant refused to speak with police without the presence of an attorney, State v. Curtis, 110 Wash.App. 6, 9, 37 P.3d 1274 (2002); and (4) prosecutor elicited the fact that the defendant carried his attorney's business card, which listed his rights if stopped for suspicion of driving under the influence, State v. Nemitz, 105 Wash.App. 205, 213, 19 P.3d 480 (2001).
[8] We do not mean to prevent anticipatory impeachment. It may be proper upon the appropriate foundation and with the court's permission.
[9] We agree with the dissent that Burke's statements and omissions before he invoked silence were admissible. Such statements and omissions are sometimes referred to as partial silence. However, partial silence adds little to our review. To the extent the defendant made statements inconsistent with a subsequent defense, there is no silence and the Fifth Amendment does not apply. See State v. Young, 89 Wash.2d 613, 620-21, 574 P.2d 1171 (1978).

We respectfully part company with the dissent in our interpretation of the prosecutor's opening argument (compounded by the officer's testimony) and in our assessment of its impact. The opening argument did not only emphasize that Burke had a full opportunity to tell his story. See dissent at 14-15. Nor did the comment relate only to Burke's father. See dissent at 14. The opening argument directly linked Burke's termination of the interview with the idea that it was "not ok" to have sex with J.S., i.e., that he was guilty of rape.
[10] Both parties make considerable arguments based upon the `Sixth Amendment right to counsel. While the right to counsel may trigger certain protections, the right to remain silent may be exercised any time. Easter, 130 Wash.2d at 238, 922 P.2d 1285. We rest our opinion on the Fifth Amendment, not the Sixth Amendment.
[11] Given our disposition, we do not reach the State's remaining arguments.
[1] In the majority's view, RAP 2.5 is inapplicable because the State did not raise the issue.

But this court has a duty to determine the appropriate scope of appellate review even when the parties have not raised the issue, Barnett v. Hicks, 119 Wash.2d 151, 154, 829 P.2d 1087 (1992).
[2] Although the improper testimony referred not to silence but to Burke's equivocal request for an attorney, it is properly analyzed as an alleged comment on his prearrest silence. See Combs v. Coyle, 205 F.3d 269 (6th Cir.2000) (analyzing prosecutor's use of "talk to my lawyer" as a comment on defendant's prearrest silence); see also Wainwright v. Greenfield, 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted"). Burke's statement is best understood as indicating a desire to remain silent until he consults with an attorney.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).